M & I MARSHALL & ILSLEY BANK, Trustee of the Alfred L. Easterday Family Trust, Plaintiff-Appellant,

v.

TOWN OF SOMERS, A Wisconsin Municipal Corporation, Defendant and Third Party Plaintiff-Respondent,

COUNTY OF KENOSHA, Third Party Defendant.

Max R. BAUM, Sylvia C. Morrow and Rose Marie Schmidt, Plaintiffs-Appellants,

v.

TOWN OF SOMERS, A Wisconsin Municipal Corporation, Defendant and Third Party Plaintiff-Respondent,

COUNTY OF KENOSHA, Third Party Defendant.

John P. CSEPELLA, Plaintiff-Appellant,

v.

TOWN OF SOMERS, A Wisconsin Municipal Corporation, Defendant and Third Party Plaintiff-Respondent,

COUNTY OF KENOSHA, Third Party Defendant.

271

BOTHE ASSOCIATES, INC., A Wisconsin Corporation, Plaintiff-Appellant,

v.

TOWN OF SOMERS, A Wisconsin Municipal Corporation, Defendant and Third Party Plaintiff-Respondent,

COUNTY OF KENOSHA, Third Party Defendant.

Supreme Court

*No. 85–1594. Argued September 8, 1987.—Decided November 4, 1987.*

(Also reported in 414 N.W.2d 824.)

For the plaintiffs-appellants there were briefs by *Morton J. Schmidt, John A. Zodrow* and *Schmidt & Zodrow, Ltd.,* Milwaukee, and oral argument by *Morton J. Schmidt* and *John A. Zodrow.*

For the defendant-respondent there was a brief by *Donald E. Mayew* and *Phillips, Richards, Lepp, Mayew and Kluka, S.C.,* Kenosha, and oral argument by *Charles Richards.*

There were amicus curiae briefs by *Frank Volpintesta,* corporation counsel, for Kenosha county; *Carlyle H. Whipple* and *Whipple Law Offices, S.C.,* and

*William Davis,* all of Madison, for The Sierra Club, John Muir Chapter, Citizens for a Better Environment, The Audubon Society and The Environmental Decade; *Richard A. Lehmann* and *Lawton & Cates, S.C.,* and *Steven M. Schur,* of counsel, all of Madison, for The Wisconsin Chapter of the American Planning Association, The Southeastern Wisconsin Regional Planning Commission and The Wisconsin Council of Regional Planning Organizations; *Maryann Sumi,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general, for the State of Wisconsin; and, *Kathleen M. Falk,* Wisconsin Public Intervenor, Madison.

WILLIAM G. CALLOW, J. This is an appeal from an order of the circuit court for Kenosha county, Judge David M. Bastian, granting summary judgment to the Town of Somers. This appeal is before us on certification by the court of appeals.

The court of appeals certified to this court the following two issues:

> "(1) Is a town which has adopted a county-wide comprehensive revised zoning ordinance pursuant to sec. 59.97(5)(d), Stats., liable in an inverse condemnation action based upon wetland conservancy restrictions on the use of the plaintiff's land which allegedly caused over a 90% reduction in value of the land? Or, is the appropriate defendant the county which has enacted the comprehensive ordinance and retains the control over enforcement and amendment of the challenged ordinance?
> "(2) Assuming the town is the proper party, did the trial court erroneously rely upon *Just v. Marinette County* as dispositive of this case?" (Footnote omitted.)

Because we find that Kenosha county controls the zoning ordinance challenged in this action, we hold that Kenosha county is the proper party in this action.

275

Because Kenosha county is not a party to this action, we conclude that this action should be dismissed. Accordingly, we affirm the order of the circuit court.

The facts, as set out in the pleadings and supporting papers, are as follows: On May 3, 1983, the Kenosha County Board of Supervisors repealed its existing General Zoning and Shoreland/Floodplain Zoning Ordinance, which had been approved by the Town of Somers, and adopted a new, revised General Zoning and Shoreland/Floodplain Zoning Ordinance, effective May 7, 1983. The Town of Somers (Town) subsequently approved the comprehensive revision on or about July 13, 1983. Under the provisions of sec. 59.97(5)(d), Stats.,[1] and the Kenosha County Zoning Ordinance,[2] had the Town not approved the revision

[1]Section 59.97(5)(d), Stats., provides in pertinent part:

"(5) **Formation of zoning ordinance; procedure.**

". . . .

"(d) The county board may by a single ordinance repeal an existing county zoning ordinance and reenact a comprehensive revision thereto in accordance with this section . . . . The comprehensive revision may provide that the existing ordinance shall remain in effect in a town for a period of up to one year or until the comprehensive revision is approved by the town board, whichever period is shorter. If the town board fails to approve the comprehensive revision within a year neither the existing ordinance nor the comprehensive revision shall be in force in that town."

[2]Section 12.02–2(a) and (b) of the Kenosha County General Zoning and Shoreland/Floodplain Zoning Ordinance (May 7, 1983) provides in pertinent part:

"(a) This ordinance shall be effective after . . . approval by the town board of supervisors. The zoning ordinance of Kenosha county 1959, as adopted and amended, shall remain in effect in each individual town until this ordinance is approved by the town board of supervisors, or for a period of one year from the date of adoption of this ordinance by the county board of supervisors in its entirety, whichever comes first.

within one year after its enactment by Kenosha county (County), the Town, by operation of law, would have been left without a zoning ordinance effective May 7, 1984.

As a result of the approval by the Town of the 1983 General Zoning and Shoreland/Floodplain Zoning Ordinance, approximately 31 acres of land owned by M & I Marshall & Ilsley Bank, Max Baum, Sylvia Morrow, Rose Schmidt, John Csepella, and Bothe Associates, Inc., were removed from an Industrial District classification and placed in a C-1 Lowland Resource Conservancy District. Under the Industrial District classification, permitted uses included, but were not limited to, manufacturing, wholesale business, printing and publishing.[3] Under the C-1 Lowland Resource Conservancy classification, principal uses were limited primarily to agriculture; fishing; grazing; hunting; preservation of scenic, historic, and scientific areas; public fish hatcheries; public parks; sustained yield forestry; stream, bank, and lakeshore protection; water retention and wildlife preserves. Conditional uses were prohibited except for sod farming and utility facilities. In addition, no structures except those accessory to a permitted use were allowed.[4]

During June and July of 1984, M & I Marshall & Ilsley Bank (No. 84–CV–773); Max Baum, Sylvia Morrow, and Rose Schmidt (No. 84–CV–847); John Csepella (No. 84–CV–866); and Bothe Associates, Inc.

---

"(b) If the town board of supervisors does not approve this ordinance by the end of the one year period aforementioned, neither this ordinance nor the zoning ordinance of 1959 as amended shall be in effect in that town."

[3]For the full text of the Industrial District uses, see Exhibit 1.

[4]For the full text of the C-1 Lowland Resource Conservancy District uses, see Exhibit 2.

(No. 84–CV–942); filed separate actions against the Town, seeking a declaration that the Town, by adopting the Kenosha County General Zoning and Shoreline/Floodplain Ordinance, had taken their property and requesting the initiation of inverse condemnation proceedings. Each of the complaints alleged that the reclassification of the properties as C-1 Lowland Resource Conservancy had, in effect, resulted in a taking of their property without just compensation. In each case, the Town filed a third party complaint against the County, contending that, if a taking had occurred, it was the action of the County.

Shortly after initiating these actions, each plaintiff brought a motion for summary judgment, requesting a declaration and finding of inverse condemnation. In support of the motions for summary judgment, each plaintiff filed an identical affidavit which included the pre-rezoning tax assessed value, the post-rezoning tax assessed value, and a post-rezoning appraised value. According to the affidavit, the tax assessed value on the four properties decreased after the rezoning from $29,700 to $6,300; $61,500 to $9,600; $23,400 to $2,400; and $25,000 to $3,600, respectively. The affidavit further alleged that "the restrictions that are placed on the use of the land has rendered each of the above parcels practically and substantially useless for all reasonable purposes, and the marketability of each parcel has been destroyed."

In response, the Town filed a brief in opposition to the motions for summary judgment, alleging that factual disputes existed. In particular, the Town alleged there were factual issues as to whether: (1) the ordinance was designed to prevent a public harm rather than create a public good, (2) the drop in value of the land was related to the land in its natural state,

(3) the ordinance was designed to protect the water of this state from degradation, and (4) the ordinance applies to many landowners similarly situated.

The Town further filed a motion for summary judgment against the County on the ground that, if summary judgment was granted in favor of the plaintiffs, the County, as a matter of law, was obligated to indemnify the Town. In support of its motion for summary judgment, the Town filed an affidavit alleging: (1) that the property is unsuited for industrial development in its natural state and (2) that the severe decrease in market value was based not on the value of the land in its natural state but, instead, on the value of the land if it could be filled and developed for industrial purposes. The affidavit further stated that an on-site inspection by the Southeastern Wisconsin Regional Planning Commission revealed that the subject properties consisted of approximately 14 acres of wetland and that the majority of the properties were located in a primary environmental corridor.

Pursuant to the parties' requests, the actions brought by M & I Marshall & Ilsley Bank, Max Baum, Sylvia Morrow, Rose Schmidt, John Csepella, and Bothe Associates, Inc., (M & I) were consolidated on January 4, 1985.

Following a hearing and submission of briefs by all the parties, the trial court denied M & I's motions for summary judgment. Relying primarily upon *Just v. Marinette County,* 56 Wis. 2d 7, 201 N.W.2d 761 (1972), the trial court held that, because the zoning ordinance was "designed to maintain the natural state of the property for the public benefit and not for public use," the ordinance did not constitute a taking of the plaintiffs' property. According to the court, the ordinance was a reasonable exercise of the police

power, was not arbitrary or capricious as applied to the plaintiffs' property, and was therefore constitutional. Even though the Town failed to move for summary judgment, the trial court ordered, pursuant to sec. 802.08(6), Stats., that the Town be granted summary judgment against each plaintiff for dismissal of each complaint. In addition, the trial court, after inviting a motion for summary judgment by the County, granted summary judgment to the County.

M & I appealed the order of the trial court granting summary judgment to the Town. Prior to ruling on the appeal, the court of appeals granted permission to the County to file an amicus curiae brief. Thereafter, the court of appeals certified this case to us, and we accepted the certification on March 5, 1987. In addition, we granted the requests of the State of Wisconsin; Wisconsin Public Intervenor; Sierra Club, John Muir Chapter; Environmental Decade; Citizens for a Better Environment; Audubon Society; and three Wisconsin planning associations to file amicus curiae briefs.

Our first concern is whether it is the Town or the County which is liable for any "takings" claims arising from a town's approval of a county zoning ordinance which was the result of a repeal and reenactment of a comprehensive countywide zoning ordinance. M & I argues that, because an ordinance is not effective until approved by a town, the Town, by choosing to approve the County ordinance, was the entity which took M & I's property without just compensation. According to M & I, because the County ordinance was merely advisory, it was the Town's choosing to adopt the ordinance, and not the County's enactment of the ordinance, which made the ordinance applicable to M & I's land.

We disagree with M & I for a number of reasons. A careful analysis of the zoning statutes indicates that zoning was meant, wherever possible, to be effectuated at a countywide level. Under sec. 59.97(1), Stats., counties are given the authority to "plan for the physical development and zoning of territory within the county." Moreover, under sec. 59.97(4), Stats., a county is authorized to adopt ordinances to promote the public health, safety, and general welfare of all areas within the county but outside the limits of incorporated villages and cities. All zoning ordinances adopted pursuant to this authority must be approved by the town before it is effective in that town. Section 59.97(5)(c), Stats. However, once the town approves a county zoning ordinance, if the town fails to approve any repeal and reenactment of a county zoning ordinance within a year of the reenactment, the town is left with no zoning and no authority to zone. Section 59.97(5)(d), Stats. Where there is a county zoning ordinance adopted by a town, the county retains the power to enforce the ordinance and make special exceptions to the terms of the ordinance. Secs. 59.97(11) and 59.99, Stats. The county's power, how-ever, is limited when the county seeks merely to amend the comprehensive zoning plan. Under such circumstances, the town is empowered to prohibit any amendment affecting town property and, thus, retain the zoning set forth in the original ordinance. Section 59.97(5)(e), Stats. (1983–84). Furthermore, although final authority rests with the state, the county is directed to adopt shoreland[5] and floodplain[6] zoning.

---

[5]Section 59.971, Stats.

[6]Section 87.30, Stats.

Finally, zoning appeals are directed to the county. Section 59.99, Stats.

In contrast to the power given a county, a town's authority to adopt zoning is limited. First and foremost, if the county has enacted a county zoning ordinance, a town is prohibited from adopting its own ordinance. *Edelbeck v. Town of Theresa,* 57 Wis. 2d 172, 182a, 203 N.W.2d 694, *on motion for rehearing* (1973). If the town is located in a county which has not adopted a county zoning ordinance, the town may petition the county board to adopt a county zoning ordinance. Where the county board does not adopt a county zoning ordinance within the statutorily prescribed period, the town is then authorized to adopt its own ordinance. Section 60.74, Stats. (1981–82).[7] A town which has been granted the authority to exercise village powers may adopt its own zoning ordinance. However, where the county has adopted a county zoning ordinance, the town ordinance is effective only if it is approved by the county board. Section 60.74(7), Stats. (1981–82).[8]

From these provisions, it is clear that the primary authority to enact, repeal, and amend a zoning ordinance was intended to be, and is, vested at the county level. The harsh consequence which results from a town's failure to approve a countywide zoning ordinance which follows the repeal and reenactment of the ordinance emphasizes the statutory preference

[7]Section 60.74, Stats. (1981–82), was repealed and recreated as sec. 60.61, Stats. 1983 Wisconsin Act 532.

[8]Section 60.74(7), Stats. (1981–82), was repealed and recreated as sec. 60.62, Stats. 1983 Wisconsin Act 532.

for zoning to be enacted at the county level. Consistent with this intention, it is the county which should be responsible for any liabilities which may arise from the adoption of a countywide zoning ordinance.

M & I's reliance upon *Quinn v. Town of Dodgeville*, 122 Wis. 2d 570, 364 N.W.2d 149 (1985), for the proposition that the town should be liable under a shared powers analysis is misplaced. In *Quinn* we held that a town's decision—whether to veto an amendment to a county zoning ordinance and retain the prior zoning or to adopt the amendment and be subject to the new zoning—constituted a legislative act. *Id.* at 578–79. In reaching this conclusion, we focused upon the ability of the town to preserve the existing zoning. *Id.* at 578. Thus, because the Town of Dodgeville, under the facts of that case, had the option to retain a particular part of the original zoning ordinance or adopt the amendment, we concluded that this power of election to retain the existing zoning constituted a legislative act.

However, in this case, the Town did not have the ability to preserve the existing zoning. Once the County repealed and reenacted its zoning ordinance, the Town was left with the choice of approving the new ordinance or having no zoning. M & I argues that some major cities have survived without zoning. We are not persuaded that the decision between no zoning and approving a county zoning plan renders the decision a legislative act. We conclude that no liability arises to a town from that town's approval of a county zoning ordinance which has been enacted following the repeal of the prior effective county zoning ordinance.

283

■

Moreover, we conclude that M & I erroneously cites *Kmiec v. Town of Spider Lake*, 60 Wis. 2d 640, 211 N.W.2d 471 (1973), as support for the general proposition that a town's adoption of a county ordinance is a legislative act. The *Kmiec* case states that "the town of Spider Lake adopted [the] zoning ordinance with certain modifications." *Id.* at 644. Because a town is not authorized to amend a county ordinance, it is apparent that the ordinance was adopted pursuant to village powers. An examination of the briefs confirms that the town had adopted village powers and had adopted the ordinance pursuant to those powers. It was, therefore, the action of the town (acting as a village), separate from the county, which made the town's action legislative. Because the Town in the present case has not adopted village powers, *Kmiec* is inapplicable.

■

Finally, we note that the general statutory authority allowing the Town to seek amendments to the county zoning ordinance does not impose liability on the Town for its adoption of a county zoning ordinance. This power to seek amendments exists under sec. 59.97(5)(e)1, Stats., and is granted to the town board of any town wherein the ordinance is in effect, to any member of the county board or by the agency designated by the county board to consider county zoning matters, and to any property owner in the area to be affected by the amendment. If the power to seek amendments was sufficient to impose liability, then those enumerated above who failed to seek amendments to the county zoning ordinance could be liable for the taking of property. We decline to adopt such a rule.

■

Because we find that the County, and not the Town, is the entity which is liable for any takings which might result from the repeal and reenactment of the Kenosha County General Zoning and Shoreland/Floodplain Zoning Ordinance, we conclude that the County is the proper defendant in this action. Because M & I's suit failed to name the proper party, we hold that M & I has failed to state a claim upon which relief may be granted. For that reason, we affirm the circuit court's dismissal of this action against the Town. We reach this result despite the Town's failure to file a motion to dismiss. Under sec. 802.08(6), Stats., if a party against whom a motion for summary judgment is asserted is entitled to a summary judgment, summary judgment may be awarded to such party even though the party has not moved therefor.[9]

■

We further hold that this action is dismissed without prejudice as to M & I's right to initiate an action against Kenosha County. Because M & I never initiated an action against Kenosha County, M & I is not bound by the summary judgment dismissing the Town of Somers' claim against Kenosha County.

---

[9]Under sec. 802.06(2), Stats., a motion to dismiss for failure to state a claim shall be treated as a motion for summary judgment under sec. 802.08, Stats., if matters outside of the pleadings are presented to the court. Because matters outside of the pleadings were presented to the court in this case, the decision whether to dismiss for failure to state a claim is treated appropriately as though it was a decision to grant summary judgment. The Town of Somers is, therefore, entitled to summary judgment under sec. 802.08(6), Stats., despite its failure to file such a motion.

Although we have concluded that the case before us should be dismissed, a number of factors cause us to discuss the second certified issue. First, as evidenced by the certification of the court of appeals, the proper application of *Just v. Marinette County, supra,* to a taking claim may be unclear under the present law. In addition, the relationship between environmental zoning and a property owner's right to be protected from overextensive regulation is an issue of significant public importance. Therefore, in consideration of the fact that we have extensive briefing by a considerable number of interested parties, including the State of Wisconsin; Wisconsin Public Intervenor; Sierra Club, John Muir Chapter; Environmental Decade; Citizens for a Better Environment; Audubon Society; three Wisconsin planning associations; Town of Somers; County of Kenosha; and four affected landowners, we find that it would best serve the interests of justice to address the second certified issue.

The certification by the court of appeals questions the continued applicability of our decision in *Just v. Marinette County, supra,* to a claim that a zoning ordinance takes an individual's property without compensation.[10] In *Just* we upheld, as a valid exercise of the police power, Marinette County's shoreland zoning ordinance against a challenge that the ordinance amounted to a constructive taking of the Just's land without compensation. In reaching this conclusion, we focused upon the distinction between regula-

[10]Article I, section 13 of the Wisconsin Constitution provides: "The property of no person shall be taken for public use without just compensation therefor." Furthermore, under sec. 32.10, Stats., a landowner may seek the initiation of inverse condemnation proceedings if a person possessing the power of condemnation has occupied the premises of the landowner.

tions which sought to prevent a public harm versus regulations designed to create a public benefit. In particular, we noted that "'the state takes property by eminent domain because it is useful to the public, and under the police power because it is harmful. . . .' Thus the necessity for monetary compensation for loss suffered to an owner by police power restriction arises when restrictions are placed on property in order to create a public benefit rather than to prevent a public harm." *Just,* 56 Wis. 2d at 16; *see also Village of Sussex v. Department of Natural Resources,* 68 Wis. 2d 187, 198, 228 N.W.2d 173 (1975).

We also noted that, where the police power restriction causes such a great diminution in the value of the land which the landowner ought not to bear such a burden for the public good, then the restriction is likely to be treated as a taking. *Just,* 56 Wis. 2d at 15. However, a landowner does not have an absolute and unlimited right to change the nature of his or her property. Thus, "[w]hile loss of value is to be considered in determining whether a restriction is a constructive taking, value based upon changing the character of the land at the expense of harm to public rights is not an essential factor or controlling." *Id.* at 23.

Although this court in *Just* noted the state's duty under the public trust doctrine to protect shoreland areas, we conclude that the analysis outlined in *Just* is not limited to a situation where the lands involved are connected to the state's duty under the public trust doctrine. While the public trust doctrine was a factor in the *Just* decision, the key to analyzing a claim that property has been taken without compensation is the

determination of whether the ordinance prohibits a public harm or provides a public benefit.

■

In analyzing any case in which it is claimed that land is taken without just compensation—whether the regulated land is a wetland within a shoreland area, or land within a primary environmental corridor, or an isolated swamp—the test to be applied is the same: public benefit versus public harm. Where land is taken for the public benefit, the taking is compensable. However, if the land is regulated to avoid a public harm, then the regulation is not compensable unless the regulation results in a value diminution to the landowner which is so great as to amount to a confiscation. We note, further, that a parcel of land which consists of continuing wetland which is partly within and partly outside a shoreland area should be treated as if the entire wetland was located within a shoreland area. There would be little value to the wetland within the shoreland if the part of the wetland outside the shoreland area was allowed to be altered.

*By the Court.*—The order of the circuit court for Kenosha county is affirmed.

## EXHIBIT 1

*SECTION X. INDUSTRIAL DISTRICT*

*Use.* In the Industrial District, no building or premises shall be used and no building shall hereafter be erected or structurally altered, unless otherwise provided in this ordinance, except for one or more of the following uses:

1. Any use permitted in the Commercial District except residential, educational and institutional uses; provided that:

 (a) There may be one single-family residential use established in the same building with any commercial use.

 (b) There may be a dwelling for a watchman or caretaker employed on the premises and members of his family in connection with any wholesale or industrial use.

2. Wholesale business.

3. Printing and publishing.

4. Manufacture of products from paper or plastics, but not the manufacture of paper, pulp or plastics.

5. Repair, service and assembly of motor-propelled or non-motor-propelled vehicles, including the repair and storage of automotive accessories, except the wrecking of motor-propelled vehicles. See Section XII(D)(2).

6. Storage and warehousing of fuel and materials and contractors' yards, except the stor-

age of wrecked and dismantled vehicles, junk, explosives or inflammable gases or liquids and the mixing of cement or concrete. See Sections XII(D)(2), XII(D)(6) and XII(D)(11).

7. Manufacture and bottling of nonalcoholic beverages.

8. Processing, packing and manufacture of food, including bakeries, except meat and meat products, fish and fish products, sauerkraut and cabbage by-products or the vining of peas. See Section XII(D).

9. Manufacture of products from wood, except the manufacture of paper pulp and plastics.

10. Manufacture of sporting goods, home and office appliances and supplies.

11. Manufacture of goods from leather, but not tanning of hides or manufacture of leather.

12. Knitting mills and the manufacture of products from finished fabrics.

13. Cleaning, dyeing and pressing establishments and laundries, except bag cleaning. See Section XII(D)(3).

14. Laboratories.

15. Manufacture of jewelry and cosmetics.

16. Enameling and painting.

17. Blacksmithing, tinsmithing, sheet metal working and plumbing shops.

18. Other uses as listed in Section XII(D), *only,* under the conditions imposed therein, when approved by the Kenosha County Board of Supervisors.

19. Any other use not in conflict with any laws of the State of Wisconsin or any ordinances of Kenosha County governing Nuisances.

### EXHIBIT 2

## G. *CONSERVANCY DISTRICTS*

### 12.25–1 C-1 LOWLAND RESOURCE CONSERVANCY DISTRICT

(a) Primary Purpose and Characteristics
The C-1 Lowland Resource Conservancy District is intended to be used to prevent destruction of valuable natural or man-made resources and to protect water courses and marshes including the shorelands of navigable waters, and areas that are not naturally drained, or which are subject to periodic flooding, where development would result in hazards to health or safety or would deplete or destroy natural resources or be otherwise incompatible with public welfare.

(b) Principal Uses

1 Agricultural uses, provided that they do not involve extensions of cultivated areas, extension of or creation of new drainage systems, and further provided that they do

291

not substantially disturb or impair the natural fauna, flora, topography, or water regimen.

2 Fishing

3 Grazing

4 Hunting

5 Preservation of scenic, historic and scientific areas

6 Public fish hatcheries

7 Public parks, where left in a natural, undeveloped, open-space use

8 Sustained yield forestry

9 Stream, bank and lakeshore protection

10 Water retention and wildlife preserves

(c) Accessory Uses

1 Structures accessory to principal uses, not intended for human habitation or the confined housing of livestock

(d) Conditional Uses (see also section 12.29–8)
No conditional uses shall be permitted in the C-1 Lowland Resource Conservancy District except:

1 Sod farming

2 Utility facilities (except buildings and substations) such as underground water tight conduits, telephone and electric poles, etc., constructed in conformance with section NR116.17 of the Wisconsin Administrative Code.

(e) Lot Area
Where a lot or parcel is located partially within a C-1 Lowland Resource Conservancy District and partially within an adjoining use district, that area of the lot or parcel in the C-1 District may be used to meet the lot area requirement of the adjoining district provided that at least 50 percent of the minimum lot area requirement is provided outside the C-1 District where public sanitary sewerage facilities are available, and at least 40,000 square feet is provided outside the C-1 District where public sanitary sewerage facilities are not available. (11/5/84)

(f) Structures
No structure shall be permitted, except those accessory to a permitted use, in the C-1 Lowland Resource Conservancy District. Furthermore, no on-site soil absorption sanitary sewage system, holding tank, or private well used to obtain water for ultimate human consumption shall be constructed in the C-1 Lowland Resource Conservancy District.