REEL ENTERPRISES, a Wisconsin partnership,
Harold Swanson, Sr., Harold Swanson, Jr.,
Robert L. Swanson, Gary R. Swanson and
Swanson Heavy Moving Company, Inc.,
Petitioners-Appellants,

v.

CITY OF LA CROSSE, a municipal corporation,
and Wisconsin Department of Natural
Resources, Respondents.†

Court of Appeals

*No. 86–0746. Orally argued April 18, 1988.—Decided
September 29, 1988.*

(Also reported in 431 N.W.2d 743.)

† Petition to review denied.

For the petitioners-appellants there were briefs by *James G. Curtis* and *Hale, Skemp, Hanson & Skemp,* and oral argument by *James G. Curtis.*

For the respondent Wisconsin Department of Natural Resources there was a brief by *Bronson C. La Follette,* attorney general, and *Thomas L. Dosch,* assistant attorney general, and oral argument by *Thomas L. Dosch,* assistant attorney general.

For the respondent City of La Crosse there was a brief by *Patrick J. Houlihan,* city attorney, and oral argument by *Thomas L. Jones, III,* assistant city attorney.

Before Gartzke, P.J., Dykman and Eich, JJ.

GARTZKE, P.J.   Reel Enterprises, its individual partners and Swanson Heavy Moving Company, Inc., appeal from a judgment dismissing their complaint for inverse condemnation against the City of La Crosse and the Department of Natural Resources. The theory of the complaint is that the DNR's acts in pursuit of but before the adoption of a floodplain zoning ordinance for the city, pursuant to sec. 87.30, Stats., and

DNR's other acts, "took" the plaintiffs' properties for public use without compensation.[1]

The circuit court concluded that since the zoning ordinance had not become legally effective, this suit had been prematurely commenced. It dismissed the complaint without prejudice to plaintiffs' right to bring another suit if the ordinance became effective.

The dispositive issue is whether the complaint alleges acts by the city or the DNR which can be a temporary taking of property, requiring just compensation under sec. 32.10, Stats., and Wis. Const. art. I, sec. 13. We conclude that because all but one of the alleged acts are not legally enforceable restrictions on the use of any of the properties, none of those acts can be a taking. Because the complaint fails to allege that the remaining act deprived any of the plaintiffs of all or substantially all of the beneficial use of their properties, that act is not a taking. We therefore affirm the judgment dismissing the complaint.

The trial court properly treated defendants' motion to dismiss as one for summary judgment. When defendants moved to dismiss the complaint, matters outside the pleadings were presented to and not excluded by the trial court. Under these circumstances the motion to dismiss must be treated as one for summary judgment. Sec. 802.06(3), Stats.

The only purpose of summary judgment methodology is to determine whether a genuine issue of material fact exists which requires a trial. If no factual issue exists and the moving party is entitled to judgment as a matter of law, then the trial court has

---

[1]Shortly after this appeal was filed, the DNR adopted a floodplain zoning ordinance, the validity and terms of which are not before us.

no discretion: it must grant the relief requested. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 310, 401 N.W.2d 816, 820 (1987). The first step is to determine whether the complaint states a claim. If it does not, the methodology stops and the complaint must be dismissed.

■

As an appellate court, we apply the same methodology as the trial court. Appellate review is *de novo. Wright v. Hasley,* 86 Wis. 2d 572, 579, 273 N.W.2d 319, 322–23 (1979).

We read the complaint in light of pertinent floodplain legislation. If a municipality does not adopt a reasonable and effective floodplain zoning ordinance within one year after data adequate to formulate the ordinance is available, the DNR must determine the limits of a floodplain in the municipality and adopt an ordinance applicable to the municipality.[2] Sec. 87.30(1)(a), Stats. The floodplain determination and ordinance adopted by the DNR has the same effect as if adopted by the city, and the city must enforce the ordinance as its own. Sec. 87.30(1)(b). Anything placed on or maintained within the floodplain in violation of the ordinance is a public nuisance, and violators risk a fine of $50 for each day during which a violation exists. Sec. 87.30(2).

---

[2]The "floodplain" is land which may be covered during a regional flood. A "regional flood" is a flood determined to be representative of large floods known to have generally occurred in Wisconsin and which may be expected to occur on a particular river. The floodplain includes the "floodway," which is the channel of a river and those parts of the floodplain adjoining the channel required to carry and discharge the flood water during the regional flood. Wis. Adm. Code sec. NR 116.03(16), (41) and (22).

The complaint alleges that the plaintiffs own lots in an industrial plat near the LaCrosse River. Reel Enterprises purchased the entire tract before 1980, retained some lots within it and conveyed others to Swanson Heavy Moving, Harold Swanson, Jr., and to persons not parties to this action. When Reel Enterprises bought the property, it was subject to a city floodplain zoning ordinance applicable to the La Crosse River and approved by DNR. That ordinance permitted the plaintiffs to develop the property as a commercial industrial park, and they obtained city permits to put fill materials and buildings on it.

On July 22, 1981 the DNR advised the city that DNR's study of the La Crosse River floodplain indicated a need for the city to revise its ordinance. The city hired a consultant to make an independent study of the floodplain, and the DNR agreed not to adopt an ordinance for the city under sec. 87.30, Stats., until that study had been completed. In April 1982, the city revised its ordinance in accordance with the conclusions of its independent study.

In May 1982, the DNR disapproved the city's revised ordinance and gave notice the next month that it would begin proceedings under sec. 87.30, Stats., to adopt a floodplain zoning ordinance for the city. That summer the DNR filed a series of lis pendens which effectively precluded the plaintiffs from developing or selling their properties.

The city brought an action to review DNR's disapproval of the revised ordinance. On March 21, 1983 the circuit court reversed DNR's decision disapproving the ordinance. DNR appealed, and the court of appeals reversed the decision of the circuit court and upheld DNR's original disapproval of the ordi-

nance. *City of La Crosse v. DNR,* 120 Wis. 2d 168, 353 N.W.2d 68 (Ct. App. 1984).

In April 1982 the city applied to DNR for a sanitary sewer extension in the plat. In May 1982 DNR disapproved the application because the extension would be within a floodway. The city and all but one of the plaintiffs brought a circuit court action challenging DNR's decision, and on March 21, 1983 the court reversed DNR's denial of the extension permit.[3]

The complaint alleges that in the summer of 1982 the DNR refused to permit further deposits of fill materials on the property. The reason for the denial is not alleged, nor do plaintiffs allege they sought judicial relief.

In the fall of 1984 the DNR held a public hearing in La Crosse with respect to its imposition of a floodplain zoning ordinance on the city under sec. 87.30, Stats. In early 1985 the city brought an action to stay any further proceedings before the DNR. That action was dismissed.

The complaint continues that the DNR's studies of the La Crosse River floodplain put all or much of plaintiffs' properties within the floodway, and that the DNR intends to impose a floodplain zoning ordinance

---

[3]Although the complaint can be read as suggesting that this order was successfully appealed, that cannot be the intent. The circuit court order of March 21, 1983 reversed both DNR's disapproval of the city's ordinance and DNR's denial of the sewer extension permit. DNR appealed and, as we have noted, the appeal is reported in *City of La Crosse v. DNR,* 120 Wis. 2d 168, 353 N.W.2d 68 (Ct. App. 1984). DNR's appeal regarding the sewer extension became moot. *Id.* at 172 n. 1, 353 N.W.2d at 70. Accordingly, the order reversing DNR's denial of the sewer extension was not reversed.

on the city, putting all or most of plaintiffs' property within the "floodway" designation. The ordinance and floodway designation will render the plaintiffs' properties useless for all reasonable purposes.

The complaint further alleges that since at least July 22, 1981, plaintiff's properties have been "occupied and taken" by the city and DNR without just compensation. The "occupancy and taking" will continue as to all or a material part of their properties, depending on where DNR places its floodway line. The complaint ends with the allegation that neither of the defendants has exercised its power of condemnation or eminent domain as to the plaintiffs' properties.

For plaintiffs to succeed in the initial stages of an inverse condemnation proceeding, the complaint must allege facts that prima facie show either an occupation of the plaintiff's property under sec. 32.10, Stats., or a taking which must be compensated under the terms of the Wisconsin Constitution.[4] *Howell Plaza, Inc. v. State Highway Comm.,* 66 Wis. 2d 720, 723, 226 N.W.2d 185, 187 (1975) (*Howell Plaza I*).

The bare allegations that the property has been taken and occupied, standing alone, are conclusions of law. We look to the facts alleged in the complaint.

[4]Section 32.10, Stats., provides in relevant part,

If any property has been occupied by a person possessing the power of condemnation and if the person has not exercised the power, the owner, to institute condemnation proceedings, shall present a verified petition to the circuit judge of the county wherein the land is situated asking that such proceedings be commenced.

Wisconsin Const. art. I, sec. 13, provides, "the property of no person shall be taken for public use without just compensation therefore."

Those allegations claim less than outright seizure or physical invasion of the plaintiff's properties.

However, a taking may result from official activities not involving outright seizure or physical invasion. Restrictive regulation, whether by the state, a county or municipality, may constitute a "regulatory taking," the term used in *First Lutheran Church v. Los Angeles County,* 482 U.S. —, —, 107 S. Ct. 2378, 2383 (1987), and in *MacDonald, Sommer & Frates v. County of Yolo,* 477 U.S. 340, 348 (1983), to describe a taking which results from officially imposed restraints on the use of property.

> [W]here the [regulatory] restriction is so great the landowner ought not to bear such a burden for the public good, the restriction has been held to be a constructive taking even though the actual use or forbidden use has not been transferred to the government so as to be a taking in the traditional sense.

*Just v. Marinette County,* 56 Wis. 2d 7, 15, 201 N.W.2d 761, 767 (1972) (citations omitted). The principle was refined in *Howell Plaza I,* 66 Wis. 2d at 730, 226 N.W.2d at 190, where the court held that a regulatory taking may occur in the absence of actual possession or occupation but only if the owner has been deprived of all, or practically all, of the beneficial use of the property.

Following the remand in *Howell Plaza I,* the same property owner again petitioned for inverse condemnation. *Howell Plaza, Inc. v. State Highway Comm.,* 92 Wis. 2d 74, 78, 284 N.W.2d 887, 889 (1979) (*Howell Plaza II*). Petitioner's theory was that the activities of the state highway commission toward acquisition of

petitioner's land for a highway corridor had deprived petitioner of all or substantially all of the beneficial use of its property. *Id.* The activities consisted of the commission's approval of the highway and preliminary work toward acquisition of the land. *Id.* at 76–77, 284 N.W.2d at 888. After informally approving the acquisition and appointing appraisers, the commission dropped all efforts to purchase the land. *Id.* at 78, 284 N.W.2d at 889. Because the trial court found that the petitioner had voluntarily withheld development of its land within the corridor and made no effort to sell it, the court concluded that the land had not been taken. *Id.* at 79, 284 N.W.2d at 889.

On appeal, the *Howell Plaza II* court noted that petitioner was entitled to compensation only if the commission's conduct amounted to a taking or occupation and that mere consequential damage to property resulting from governmental action is not a taking. *Id.* at 80–81, 284 N.W.2d at 889–90. The court affirmed its prior holding that if the owner has been deprived of practically all of the use of the property, an owner may bring an inverse condemnation action. *Id.* at 81–82, 284 N.W.2d at 890. The court held, however, that because the owner had made no attempt to develop or sell its land, the trial court could rightfully conclude the petitioner was not deprived of all or substantially all of the property's beneficial use, and therefore no taking had occurred. *Id.* at 84, 284 N.W.2d at 892.

Rather than affirming the judgment dismissing the complaint on the deprivation ground, the *Howell Plaza II* court went on to analyze the case in terms of the kind of official restriction which can result in a regulatory taking. The court observed that if the commission had "placed a legal restriction upon

petitioner such that it was permanently prevented from improving its property in any way, a taking would probably have occurred." *Id.* at 84–85, 284 N.W.2d at 892. The court said,

> [I]t is undisputed that the commission did not impose any such legal restraint upon petitioner or its property. As was stated earlier, the commission had no legal authority to restrain development in the corridor short of actually condemning the property. Without the authority, it clearly could not impose such restraints.

*Id.* at 86, 284 N.W.2d at 893. The court unequivocally stated that "[a] taking can occur absent physical invasion *only* where there is a legally imposed restriction upon the property's use." *Id.* at 88, 284 N.W.2d at 893 (emphasis added).

The legally imposed restriction requirement for a regulatory taking was applied in *Zinn v. State*, 112 Wis. 2d 417, 334 N.W.2d 67 (1983). Zinn brought an action grounded on Wis. Const. art. I, sec. 13. *Id.* at 422–23, 334 N.W.2d at 69. She owned riparian lands on McConville Lake. *Id.* at 420, 334 N.W.2d at 69. The DNR issued a declaratory ruling which extended the ordinary high water mark of the lake to include 200 acres of Zinn's dry land. *Id.* at 421, 334 N.W.2d at 69. By virtue of sec. 30.10(1), Stats., this ruling titled the 200 acres to the state. *Id.* DNR later rescinded its prior ruling and in her action Zinn claimed that she had been deprived of her property between the date of the prior ruling and the date it was rescinded. *Id.* at 422, 334 N.W.2d at 69. The trial court held that the complaint stated a claim, the court of appeals reversed on grounds that a temporary deprivation of property

is not a taking, and the supreme court accepted Zinn's petition for review. *Id.* at 422–23, 334 N.W.2d at 70.

On review, the supreme court held that a temporary deprivation can be a taking compensable under art. I, sec. 13, of the Wisconsin Constitution and the just compensation clause of the fifth amendment to the United States Constitution.[5] *Id.* at 427–28, 334 N.W.2d at 72. The court determined that DNR possessed statutory authority to make the ruling which had resulted in Zinn's loss of title, *id.* at 424–26, 334 N.W.2d at 71, and that the ruling was "a legally imposed restriction on Zinn's property under this court's decision" in *Howell Plaza II. Zinn,* 112 Wis. 2d at 427, 334 N.W.2d at 72. Finding it "difficult to conceive of a greater restriction on the property, in the absence of actual physical occupancy, than the loss of title ...," *id.,* the court concluded that Zinn's land had been taken.

We conclude from these precedents that the pertinent law of taking is as follows: In the absence of its physical occupancy or possession, private property can be taken for public use only by state, county or municipal action which imposes a legally enforceable restriction on the use of the property. If a legally enforceable restriction is imposed on that use, then a taking occurs only if the restriction deprives the owner of all, or practically all, of the use. If a regulatory taking has occurred, an action lies for

[5]Thus, the *Zinn* court presaged by four years the holding in *First Lutheran Church v. Los Angeles County,* 482 U.S. —, —, 107 S. Ct. 2378, 2388 (1987), that temporary takings which "deny a landowner all use of his property, are not different in kind from permanent takings, for which the Constitution clearly requires compensation."

inverse condemnation under sec. 32.10, Stats., or for compensation under Wis. Const. art. I, sec. 13, whether the taking is permanent or temporary.

Wisconsin's "legally enforceable restriction" rule is consistent with the concern of the United States Supreme Court for finality when a regulatory taking is alleged. That concern was noted in *First Lutheran Church,* 482 U.S. at —, 107 S. Ct. at 2383, and particularly in *MacDonald,* 483 U.S. at 348, et seq. The *MacDonald* court said that "[i]t follows from the nature of a regulatory takings claim that an essential prerequisite to its assertion is a final and authoritative determination of the type and intensity of development legally permitted on the subject property." *Id.* A regulation which fails to impose a legally enforceable restriction on the use of property is not final.[6]

The complaint contains no factual allegations showing that any part of the plaintiffs' lands has been physically occupied, possessed or invaded by the city or the DNR. We therefore determine whether the complaint shows that any act by either defendant has created a legally enforceable restriction on the use of the plaintiffs' lands.

The city is guiltless of any alleged act which could restrict the use of the plaintiffs' properties. The city's original zoning ordinance is no longer effective, and DNR disapproved the city's revised ordinance. All other acts by the city were attempts to prevent DNR

---

[6]The circuit court recognized the need for finality when it dismissed the complaint because it was premature.

from adopting a floodplain ordinance. The trial court properly dismissed the complaint as to the city.[7]

The complaint fails to allege any act by DNR (other than the fill permit denials) which imposed a legally enforceable restriction on the plaintiffs' properties. DNR's disapproval of the city's revised ordinance is the negation of a restriction. DNR's notice that it intended to adopt a sec. 87.30, Stats., floodplain ordinance is only a statement of intention. A stated intention to act in the future is not a legally enforceable restriction, unless a statute somehow makes it enforceable, and no such statute has been cited to us.

DNR's refusal to allow a sewer extension to the plaintiffs' properties was a restriction on the use of their properties. However, the circuit court reversed the DNR's disapproval of the extension. Consequently, DNR's refusal was not a legally enforceable restriction on the use of the plaintiff's properties. It therefore could not be a taking. Compare *Howell Plaza II,* 92 Wis. 2d at 86, 284 N.W.2d at 893 (taking cannot occur by restraint imposed by agency lacking legal authority to do so).

[7]We do not reach the city's argument that *M & I Marshall Bank v. Town of Somers,* 141 Wis. 2d 271, 414 N.W.2d 824 (1987), compels dismissal of the complaint as to the city. The *M & I* court held that the Town of Somers should not be responsible in inverse condemnation for liabilities resulting from its approval of a county ordinance imposing wetlands conservancy restrictions, even though that approval subjected the plaintiff's lands to those restrictions. Had the town failed to approve the county ordinance, it could have adopted its own ordinance only with the approval of the county board. This "harsh consequence" led the supreme court to conclude that the county should be solely responsible for liabilities which may arise from the adoption of the ordinance. *Id.* at 282–83, 414 N.W.2d at 828.

A legally imposed restriction which the adopting agency later repeals, rescinds or amends may be a compensable temporary taking. *First Lutheran Church,* 482 U.S. at —, 107 S. Ct. at 2389; *Zinn,* 112 Wis. 2d at 429, 334 N.W.2d at 73. But if a court reverses the agency's action which created the restriction, a legally imposed restriction does not exist and no taking has occurred.

Although *First Lutheran Church* contains language suggesting that a property owner is entitled to compensation for a taking from the date a regulation is adopted to the date it is "invalidated," 482 U.S. at—, 107 S. Ct. at 2388, that is not the rationale of the decision. *First Lutheran Church* dealt with a holding of the California Court of Appeals that "a landowner who claims that his property has been 'taken' by a land-use regulation may not recover damages for the time before it is finally determined that the regulation constitutes a 'taking' of his property." *Id.* at —, 107 S. Ct. at 2381. The United States Supreme Court disagreed and concluded that compensation was required. *Id.*

The references in that decision to "invalidation" pertain to the California rule, described in *First Lutheran Church,* 482 U.S. at —, 107 S. Ct. at 2382, as follows:

> In *Agins v. Tiburon, supra* [24 Cal.3d 266, 598 P.2d 25 (1979), *aff'd on other grounds,* 447 U.S. 255 (1980)], the Supreme Court of California decided that a landowner may not maintain an inverse condemnation suit in the courts of that State based upon a "regulatory" taking. 24 Cal 3d, at 275–277, 598 P.2d, at 29–31. In the court's view, maintenance of such a suit would allow a landowner to

677

force the legislature to exercise its power of eminent domain. Under this decision, then, compensation is not required until the challenged regulation or ordinance has been held excessive in an action for declaratory relief or a writ of mandamus and the government *has nevertheless decided to continue the regulation in effect.* [Emphasis added.]

Since the government could not decide "to continue the regulation in effect" unless it was adopted by an authorized agency using proper procedure, the California ruling does not apply to a restriction which the agency lacked the power to adopt or improperly adopted. Such a restriction was not before the Court in *First Lutheran Church,* and we conclude that the decision in that case does not conflict with the legally enforceable or legally imposed restriction test in Wisconsin.

We turn to the allegation that in the summer of 1982 DNR filed a series of lis pendens as to the plaintiffs' properties. A lis pendens is notice to the world that a specified proceeding is pending regarding certain property. A lis pendens seeks no relief. It contains and creates nothing to be enforced. It "does not create or serve as a lien on real property; it has no separate existence of its own apart from the litigation for which it served notice." *Kensington Development v. Israel,* 142 Wis. 2d 894, 904, 419 N.W.2d 241, 245 (1988). A lis pendens therefore is not a legally enforceable restriction.

The effect of a lis pendens may be, as the complaint alleges, to preclude further development or sales of the land it describes. We do not minimize the seriousness of that effect. But that effect is not a

taking unless it results from a legally enforceable restriction. Because a lis pendens is not a legally enforceable restriction, a lis pendens is not a taking of private property for public use. Plaintiffs are in the same position as the petitioner in *Howell Plaza II,* who claimed that a proposed highway had taken its land:

> If petitioner was in fact unable to develop its property, it was not due to any restriction imposed upon it by the commission, but to the uncertainty of the future status of its land. Such uncertainty is often a result of a planned, public improvement which requires the eventual acquisition of private property and does not constitute a taking of all or substantially all of the beneficial use of the property.

*Howell Plaza II,* 92 Wis. 2d at 89, 284 N.W.2d at 894.

The next pertinent allegations are that DNR's studies of the floodplain put all or much of plaintiff's properties within the floodway, and DNR intends to impose a floodplain zoning ordinance on the city, putting all or most of their properties within the floodway designation. Neither DNR's studies nor its announced intention is a legally enforceable restriction.

We now reach the last relevant allegation: that DNR refused to issue permits for the plaintiffs to deposit fill materials on their properties. Such a refusal restricts the use of property. We assume the refusal was lawfully enforceable. We therefore turn to the second level of a regulatory taking analysis: whether the restriction deprives the plaintiffs of all, or substantially all, of the use of their properties.

*Howell Plaza I,* 66 Wis. 2d at 730, 226 N.W.2d at 190. Since the complaint fails to allege that the refusal had that effect, and since we cannot conclude as a matter of law that the refusal would have that effect, the complaint fails to state a claim for a taking based on those acts.

The complaint contains no other allegations regarding acts which could be a regulatory taking. We therefore conclude that the complaint fails to state a claim. The judgment dismissing the complaint must be affirmed.

*By the Court.*—Judgment affirmed.