STATE of Wisconsin EX REL. MADISON LANDFILLS, INC.,
Petitioner-Appellant,

v.

DANE COUNTY, Respondent-Respondent.

Court of Appeals

*No. 93–0185. Submitted on briefs September 13,
1993.—Decided March 24, 1994.*

(Also reported in 515 N.W.2d 322.)

For the petitioner-appellant the cause was submitted on the brief of *William E. Callahan, Jr., Peter J. Ruud*, and *Brett K. Miller* of *Davis & Kuelthau, S.C.* of Milwaukee.

For the respondent-respondent the cause was submitted on the brief of *Cal W. Kornstedt*, Dane County Corporation Counsel, with *Jerre L. Ziebelman*, assistant corporation counsel, of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

GARTZKE, P.J. Madison Landfills, Inc. (MLI) appeals from an order dismissing its petition for certiorari. MLI brought certiorari in circuit court for review of Dane County's denial of MLI's petition to rezone property in the Town of Blooming Grove which MLI had acquired to develop a landfill. MLI contends that (1) the denial of its petition is arbitrary, capricious and unreasonable; (2) the denial amounts to inverse condemnation or a regulatory taking of its property without just compensation; and (3) the zoning classification in Dane County's ordinance violates MLI's right to equal protection. We reject MLI's contentions and affirm.

## 1. Background

MLI submitted its original rezoning petition in January 1986. In February 1986, the Dane County Zoning and Natural Resources Committee tabled the petition and it laid dormant while MLI pursued other relief. *See Madison Landfills, Inc. v. Libby Landfill Negotiating Comm.*, 179 Wis. 2d 815, 509 N.W.2d 307 (Ct. App. 1993), *review granted*, No. 92-1731 (Jan. 18, 1994); *Madison Landfills, Inc. v. DNR*, 180 Wis. 2d 129, 509 N.W.2d 300 (Ct. App. 1993).

On February 10, 1992, the committee held a public hearing on MLI's petition, and on March 30, 1992, it voted not to recommend approval. The committee adopted a motion stating that rezoning is inappropriate because (1) the County Board had previously rejected the site for a county-operated landfill; (2) MLI's operation of the landfill would be detrimental to or endanger the public health, safety, comfort or general welfare in the surrounding neighborhood; (3) use of the property as a sanitary waste disposal facility is

incompatible with surrounding property uses and would have a detrimental effect on recreational opportunities in the Nine-Springs E-Way, Lake Farm County Park and Lake Waubesa; and (4) it is not appropriate to remove the property from its present zoning classification.

On April 2, 1992, the Dane County Board of Supervisors adopted the committee's recommendation and motion to deny MLI's rezoning petition. MLI brought certiorari in the circuit court requesting that the denial of its petition be reversed or, in the alternative, that MLI be compensated for a regulatory taking of its property without just compensation. The circuit court dismissed MLI's petition for failure to state a claim.

## 2. Standard of Review

Our review of a zoning authority's zoning determination is limited to whether: (1) the zoning authority acted within its jurisdiction; (2) it proceeded on a correct theory of law; (3) its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) the evidence presented was such that it could not reasonably have made the order or determination in question. *Snyder v. Waukesha County Zoning Bd.*, 74 Wis. 2d 468, 475, 247 N.W.2d 98, 102 (1976). We examine the record *de novo* without deference to the views of the trial court. *Boynton Cab Co. v. DILHR*, 96 Wis. 2d 396, 405, 291 N.W.2d 850, 855 (1980).

### 3. Denial of MLI's Rezoning Petition

In 1987, the Department of Natural Resources (DNR) issued an environmental impact statement concerning the site. In January 1991, DNR approved MLI's feasibility report for the site. DNR determined that MLI's proposed landfill is needed, will provide an appropriate operational site life and is environmentally feasible subject to the conditions and exemptions set forth in DNR's findings, conclusions and determinations. Additionally, the Wisconsin Waste Facility Siting Board adopted an arbitrated agreement for the proposed site. MLI asserts that, given these prior approvals, the County Board's denial of MLI's rezoning request is unreasonable and unfounded.

MLI's approach would make approvals by DNR binding on local communities. That is not the legislature's intent. When adopting § 144.445, STATS., pertaining to solid and hazardous waste facilities, the legislature found that whenever a site is proposed for solid waste disposal, "the nearby residents and the affected municipalities may have a variety of legitimate concerns about the location, design, construction, operation, closing and long-term care of facilities to be located at the site . . . ." Section 144.445(1)(e). The legislature further found that:

> [L]ocal authorities have the responsibility for promoting public health, safety, convenience and general welfare, encouraging planned and orderly land use development, recognizing the needs of industry and business, including solid waste disposal . . . and that the reasonable decisions of local authorities should be considered in the siting of solid waste disposal facilities . . . .

287

Section 144.445(1)(f). Given these legislative findings, we must treat the denial by the County Board as the action of an independent governmental body which is subject to independent judicial review without regard to the actions by DNR or the siting board.

"[A]lthough a court may differ with the wisdom, or lack thereof, or the desirability of the zoning, the court, because of the fundamental nature of its power, cannot substitute its judgment for that of the zoning authority in the absence of statutory authorization." *Buhler v. Racine County*, 33 Wis. 2d 137, 146-47, 146 N.W.2d 403, 408 (1966). Nor can a court substitute the judgment of DNR or the siting board for that of the zoning authority in the absence of statutory authorization.

We are satisfied that the factual record, as evidenced by the return to the writ, supports the County Board's denial of MLI's rezoning petition. In 1983, the Board denied a proposal by Dane County itself to establish a landfill at the same site, on grounds that the site was an inappropriate and unacceptable location for a landfill. As here, the Board denied the proposal even though DNR had issued a feasibility approval for the site. The Board based its 1992 decision to deny MLI's petition on the motion of its zoning committee. That committee had received a communication from the Blooming Grove Town Board opposing the site, and it conducted a public hearing.

At the hearing, a professor of real estate and urban land economics presented evidence in favor of MLI's proposal. In his view, from a land use and development impact standpoint, a landfill is an acceptable use for the property and is compatible with existing city and county plans. He believed that denial of the rezoning petition would be arbitrary because the proposed land-

fill (1) is consistent with urban development patterns and land uses in the area, (2) is consistent with all land use plans for the site, and (3) imposes acceptable levels of visual, noise and traffic impact. In his opinion, denial would be discriminatory because public landfill developers would be treated differently than private developers under essentially the same conditions.

Eighteen persons spoke in opposition to MLI's petition, including a solid waste consultant who testified that the landfill would be an incompatible use in the area, especially in light of nearby Nine-Springs E-Way, Lake Farm County Park and Lake Waubesa.

Persons speaking on behalf of the Dane County Parks Commission testified to the following. Two million dollars of public funds had been spent to acquire and develop public lands in the area for park purposes, and those developments are endangered by the proposed landfill. Lake Farm County Park is located less than 1200 feet from the proposed site. The park, which is located on Lake Waubesa, is a 300-acre recreational area with hiking trails, camping areas, picnic shelters, play areas, lake access, a boat landing and more facilities accessible to the physically disabled than any other park in the County. An estimated 40,000-45,000 people visit the park between May and September. The landfill would create unsuitable levels of debris, odor, dust and noise in the park, especially during times of prevailing summer winds.

Two scientists spoke in opposition to the rezoning petition. An environmental engineer testified that the noise created by the trucks going to the landfill and the garbage compactors within the landfill would have a significant adverse impact on land and lake use in the surrounding area and would make the park a much less attractive recreational area. A professor of envi-

ronmental studies, specializing in water resources and wetlands, testified that the proposed landfill would negatively affect the area wetlands, including the wetlands in a 1000-acre scientific nature preserve within the Lake Waubesa ecosystem. In his judgment the landfill's geo-membrane liner would be an "ecological time bomb" because no membrane yet exists that does not deteriorate in the long run. He also noted the potential for an immense population explosion of sea gulls scavenging in the area. Because sea gulls soar as high as 2000 feet they could interfere with air traffic associated with the Dane County Regional Airport.

Over six hundred people live within one mile of the site. Area residents testified to concerns about the environmental integrity of the area, intrusive noise, potential health effects, MLI's commitment to community safety, and negative impacts on fishing and recreational activities.

As we noted earlier, we cannot substitute our judgment for that of the Board. *Buhler*, 33 Wis. 2d at 146-47, 146 N.W.2d at 408. The extent of our authority is to decide whether the Board's denial of MLI's petition was arbitrary, unreasonable and not based on the evidence before it. We cannot conclude that that is the case.

4.   Inverse Condemnation/Regulatory Taking

To succeed in the initial stages of an inverse condemnation proceeding, the complaint must allege facts that *prima facie* show either an occupation of the plaintiff's property under § 32.10, STATS., or a taking which must be compensated under the Wisconsin Constitution. *Reel Enterprises v. City of La Crosse*, 146 Wis. 2d 662, 670, 431 N.W.2d 743, 747 (Ct. App. 1988). MLI's

petition fails to allege that any of its Town of Blooming Grove property has been taken and occupied.

A taking may result from official activities not involving an outright seizure or physical occupation. Restrictive regulation may constitute a regulatory taking. *Id.* at 671, 431 N.W.2d at 747. To prevail on a regulatory taking claim, the plaintiff must establish that a lawful restriction has been imposed such that the plaintiff has been permanently prevented from using its property in any way. *Id.* at 672-73, 431 N.W.2d at 748. MLI makes no claim that Dane County's zoning ordinance has deprived MLI of all, or practically all, use of its property in the Town of Blooming Grove.

MLI claims that its investment in the landfill siting process is a property interest, and the County's denial of its rezoning petition deprives it of that property without compensation. MLI correctly states that at the time of the County's refusal to rezone its property, DNR had approved MLI's feasibility report for the proposed landfill pursuant to § 144.44, STATS., and a local agreement pursuant to § 144.445, STATS., had been successfully arbitrated.

However, MLI has no property interest in a favorable feasibility determination or even in an approved plan of operation. *Waste Management, Inc. v. DNR*, 149 Wis. 2d 817, 824, 440 N.W.2d 337, 341 (1989) (citing *Waste Management, Inc. v. DNR*, 128 Wis. 2d 59, 64-65, 381 N.W.2d 318, 321 (1986)). Nor does it have a property interest in the successful arbitration of

a local agreement under § 144.445, STATS.[1] Therefore, the County did not deprive MLI of any property.

### 5. Equal Protection

MLI's property is zoned A-1 agricultural (exclusive) (A-1-E). The zoning ordinance allows "governmental uses," including solid waste disposal sites, as conditional uses in such a district.[2] Private solid waste disposal sites are not allowed in an A-1-E district.[3] The ordinance allows public and private sanitary landfills as conditional uses in an A-2 agricultural district.[4] Consequently, the ordinance allows a public landfill developer but not a private developer to apply for a conditional use permit in an A-1-E district, and

---

[1] It remains to be seen whether MLI's investment has any value whatever. After arbitration under the Waste Facility Siting Law, § 144.445, STATS., the Waste Facility Siting Board adopted MLI's final offer as its award but deleted an item which would have made the County's zoning restrictions inapplicable to MLI's proposed facility. The circuit court vacated the award on grounds that the siting law did not authorize the board to make the deletion. The court of appeals reversed the circuit court's order insofar as it vacated that part of the board's award making the deletion. *Madison Landfills, Inc. v. Libby Landfill Negotiating Comm.*, 179 Wis. 2d 815, 818-19, 509 N.W.2d 307, 308-09 (Ct. App. 1993), *review granted*, No. 92-1731 (Jan. 18, 1994). The matter has not yet been resolved. As noted above, the supreme court granted MLI's petition for review of our decision and mandate in *Madison Landfills*.

[2] Sections 10.123(3)(c) and 10.01(23), DANE COUNTY ORDINANCES.

[3] Section 10.123, DANE COUNTY ORDINANCES.

[4] Section 10.126(3)(c), DANE COUNTY ORDINANCES.

A sanitary landfill is defined as a type of disposal operation involving the disposal of solid waste on land. Section 10.01(55), DANE COUNTY ORDINANCES.

that is why MLI seeks rezoning of its property from A-1-E to A-2.

MLI argues that because private and public developers of solid waste facilities on property zoned A-1-E in the Town of Blooming Grove are similarly situated, except that a private developer must rezone from A-1-E to A-2 but a public developer need not, the ordinance denies MLI equal protection of the laws under the Fourteenth Amendment to the United States Constitution. We reject MLI's contention.

■

Ordinances, like statutes, enjoy a presumption of validity. *State ex rel. Grand Bazaar Liquors, Inc. v. City of Milwaukee*, 105 Wis. 2d 203, 208-09, 313 N.W.2d 805, 808 (1982). The presumption applies to an ordinance challenged on equal protection grounds.

■

When examining an equal protection claim we first identify the classes involved and then the nature of the interest at stake. If, as here, no suspect class or fundamental interest exists, a court need only determine whether a legitimate public interest exists, and must uphold a classification which is in any way rationally related to the asserted purpose of the legislation. *See State ex rel. Watts v. Combined Community Servs. Bd.*, 122 Wis. 2d 65, 81-82 n.8, 362 N.W.2d 104, 112 (1985) (citing *McDonald v. Board of Election Comm'rs*, 394 U.S. 802, 809 (1964)). The challenger "bears the frequently insurmountable task of demonstrating beyond a reasonable doubt that the ordinance possesses *no rational basis* to any legislative municipal objective." *Grand Bazaar*, 105 Wis. 2d at 209, 313 N.W.2d at 809.

We accept MLI's characterization of the two classes created by the County's zoning ordinance—private and public developers of solid waste facilities on

properties zoned A-1-E. The classification does not involve fundamental interests or rights. We therefore turn to whether a legitimate County interest is involved and whether the classification is rationally related to the purpose of the ordinance. We answer both questions in the affirmative.

Dane County's interest is in the availability of waste disposal sites, a matter critical to the public welfare. The legislature itself has found that "the availability of suitable facilities for solid waste disposal . . . is necessary to preserve the economic strength of this state and to fulfill the diverse needs of its citizens." Section 144.445(1)(d), STATS.

Dane County's zoning ordinance is consistent with that legislative finding. The purpose of the ordinance is to make solid waste disposal sites available through zoning. It allows governmental uses (which include solid waste disposal sites) as conditional uses in all but three of the twenty-three types and subtypes of zoning it creates;[5] it allows sanitary landfill sites as conditional uses in four types of zoning districts.[6] The inference is inescapable that Dane County concluded that almost all zoning districts must be available for solid waste disposal sites. We turn to whether the public/private classification for A-1-E zoning is reasonably related to the purpose of the ordinance.

---

[5] "Governmental uses" are not allowed in A-B agriculture business, LC-1 commercial-1 and CO-1 conservancy districts. Sections 10.121, 10.141 and 10.155, DANE COUNTY ORDINANCES.

[6] The types are: A-1 agricultural districts (as distinguished from A-1 agricultural (exclusive) districts), A-2 agricultural districts, C-2 commercial districts and M-1 industrial districts. Sections 10.12(3)(d), 10.126(3)(c), 10.14(2)(f) and 10.15(2)(d), DANE COUNTY ORDINANCES.

The classification involves a factor particularly related to A-1-E zoning and directly related to the availability of land for solid waste disposal purposes. One express purpose of A-1-E zoning is to "comply with the provisions of the Farmland Preservation Law to permit eligible landowners to receive tax credits under Section [71.59(1)] of the Wisconsin Statutes."[7] Section 10.123(1)(a), DANE COUNTY ORDINANCES.

Section 71.59(1)(a) and (2)(d), STATS., allows a credit against Wisconsin income taxes for property taxes accrued on farmland zoned for exclusive agricultural use, and used for agricultural purposes, under an ordinance certified under subch. V of ch. 91, STATS. The purpose of subch. V is to specify the minimum requirements for zoning ordinances designating certain lands for exclusively agricultural use. Section 91.71, STATS. Section 91.75, STATS., provides in relevant part: "A zon-

_____

[7] The full text of § 10.123(1)(a), DANE COUNTY ORDINANCES, is as follows:

> Statement of Purpose. The purposes of the A-1 Exclusive Agriculture [Districts] are to: preserve productive agricultural land for food and fiber production; preserve productive farms by preventing land use conflicts between incompatible uses and controlling public service costs; maintain a viable agricultural base to support agricultural processing and service industries; prevent conflicts between incompatible uses; reduce costs for providing services to scattered nonfarm uses; pace and shape urban growth; implement the provisions of the county agricultural plan when adopted and periodically revised; and comply with the provisions of the Farmland Preservation Law to permit eligible landowners to receive tax credits under Section [71.59(1)] of the Wisconsin Statutes.

We note that § 10.123(1)(a) actually refers to "tax credits under sec. 71.09(11)" rather than under § 71.59(1), STATS. However, § 71.09(11) has nothing to do with the Farmland Preservation Law. Instead, it deals with exceptions to interest payments on estimated taxes. We conclude that the County intended to specify the relevant section, § 71.59(1).

295

ing ordinance shall be deemed an 'exclusive agricultural use ordinance' . . . if the land in exclusive agricultural use districts is limited to agricultural use and is identified as an agricultural preservation area . . . ." Section 91.75(5) provides in relevant part: "Special exceptions and conditional uses are limited to those agricultural-related, religious, other utility, institutional or governmental uses that are consistent with agricultural use and are found to be necessary in light of the alternative locations available for such uses."

Solid waste disposal sites cannot qualify for "agricultural-related, religious, other utility, [or] institutional uses," as required by § 91.75(5), STATS., but they can qualify as "governmental uses that are consistent with agricultural use . . . ." The County could not include privately owned solid waste disposal sites in an ordinance designed to meet the Farmland Preservation Law, but it could and did make land so zoned available for publicly owned solid waste disposal sites as "governmental uses."

The public/private classification of solid waste disposal sites in the zoning district in which MLI's property is located, A-1-E, is rationally related to the purpose of making as much land as possible potentially available for solid waste disposal while complying with the Farmland Preservation Act. The ordinance passes scrutiny under an equal protection analysis. It does not deny MLI equal protection of the laws.

*By the Court.*—Order affirmed.