Donald NELSON, and another, Petitioners-Appellants:
Palmer NELSON, and others, Petitioners-Appellants,
v. DEPARTMENT OF NATURAL RESOURCES, Respon-
dent.†

Court of Appeals

*No. 77–568.  Argued August 23, 1978.—Decided January 17, 1979.*
(Also reported in 276 N.W.2d 302.)

† Petition to review granted March 14, 1979.

For the petitioners-appellants there were briefs by *DeWitt, McAndrews & Porter, S. C.,* and oral argument by *Robert Sundby* of *DeWitt, McAndrews & Porter, S. C.,* of Madison.

For the respondent there was a brief by *Bronson C. La Follette,* attorney general and *Robert B. McConnell,* assistant attorney general, and oral argument by *Robert B. McConnell,* assistant attorney general.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

BABLITCH, J.   This case involves a conflict between the authority of counties to regulate the use and development of county lands under zoning powers conferred by sec. 59.97, Stats., and the authority of the Department of Natural Resources (DNR) to control statewide the location and operation of solid waste disposal sites pursuant to sec. 144.30 to 144.46, Stats.

In 1961 Columbia County (County) enacted a zoning ordinance designating certain lands as agricultural and prohibiting, among other uses, the use of such lands as dumping grounds without prior written approval of the Board of Adjustments (Board).[1] In 1968, the Town of Newport (Town), which is located in Columbia County, adopted the ordinance, as amended. In 1968, the City of Wisconsin Dells (City) purchased an eighty acre parcel of land in the Town which was designated as agricultural under the ordinance.

In May, 1975, the City petitioned the Board for permission to use the parcel as a public dumping ground. Three public hearings were held on the application. On

---

[1] Sec. 11.04 of the ordinance, in its present form, provides as follows:

In the Agricultural District no building or premises shall be used and no building shall hereafter be erected, moved, or structurally altered, unless otherwise provided in this ordinance, except for one or more of the following uses:

. . . .

10. The following uses *when the location of each such use shall have been approved in writing by the Board of Adjustments,* after public hearings and after a view of the proposed site or sites . . . . The Board's decision on any application shall be based upon the evidence produced at . . . public hearing and shall be consistent with the general purposes and intent of this ordinance, giving due consideration to convenience and necessity, environmental and agricultural effects, cost, geographic feasibility and other factors tending to show the suitability of specific proposed locations for a specific proposed use from the standpoint of public interest because of such factors as (without limitation because of enumeration) smoke, dust, noxious or toxic gases or odors, noise, vibration, operation of heavy vehicular traffic and increased traffic on the public streets; such uses shall also be required to meet the specific conditions attached below:

. . . .

(i) Public dumping grounds which meet the minimum standards of the applicable Wisconsin Administrative Codes. (Emphasis added.)

May 29, 1975, the Board rendered its decision denying the City's request, on the grounds that such use of the site would have an adverse environmental impact, that increased traffic generated by use of the land as a dump would create an extreme traffic hazard, and that the waterways and land topography rendered the site unsuitable for the proposed use.

The City petitioned for a writ of certiorari before the circuit court of Columbia County to review the Board's action. On March 29, 1976, the court rendered a decision upholding the Board. The City did not appeal that decision.

On May 20, 1976, the City petitioned the DNR for a license pursuant to sec. 144.445, Stats., to operate a solid waste disposal facility on the same parcel. The appellants, other interested Town residents, and the Board all appeared in opposition to the petition. Hearings were held before a DNR examiner on June 29 and November 12, 1976. On February 10, 1977, the DNR issued an order granting the license to the City "subject to the conditions that the site meets and satisfies all applicable statutory and administrative code requirements." Appellants brought this proceeding for judicial review of the DNR's decision on May 8, 1977, before the circuit court of Dane County pursuant to sec. 227.16, Stats. This appeal is from a judgment of that court entered on September 15, 1977, upholding the DNR's order.

The only issue which we need reach on this appeal is whether sec. 144.445, Stats., authorizes the DNR to contravene a county ordinance prohibiting the use of county lands for solid waste disposal sites.[2] We hold that it does not.

---

[2] The DNR contends that appellants are barred from review under sec. 227.16, Stats., because its original petition for review, which was never filed in circuit court, named the Natural Re-

The DNR correctly contends that the various provisions of ch. 144, Stats. (1975), pertaining to solid waste disposal must be construed together.[3] It argues that when so construed they demonstrate a legislative declaration that solid waste disposal is a matter of statewide concern, and that the DNR has been designated by the legislature as the preeminent agency to administer that concern. It submits that sec. 144.445, Stats., specifically empowers the DNR to override all local policy determinations as to the location of waste disposal sites, including those policies expressed in county zoning ordinances prohibiting (or conditioning on prior county approval) the use of certain lands as such sites.

Section 144.445, Stats. (1975), sets forth the conditions under which the DNR may issue a license for the operation of a solid waste disposal site without regard to, or in direct contravention of, local standards. Subsection (1) of that section provides in relevant part:[4]

---

sources Board rather than the Department of Natural Resources as respondent. We find no merit in this contention. *Cruz v. ILHR Department*, 81 Wis.2d 442, 260 N.W.2d 692 (1978). The DNR also argues that the review proceedings were improperly commenced because the corrected petition for review was not filed and authenticated prior to service on the DNR pursuant to sec. 801.02, Stats. This argument is similarly without merit. The procedure for review of administrative decisions is set forth in sec. 227.16 with which the appellants fully complied. Sec. 801.02 is a part of the rules of civil procedure applicable to civil actions, and inapplicable to review proceedings under the Administrative Procedure Act. *Wis. Environmental Decade v. Public Service Comm.*, 79 Wis.2d 161, 170, 255 N.W.2d 917 (1977).

[3] "It has long been settled in this state that statutes *in pari materia, i.e.,* . . . must be read together and harmonized if possible." *Weiss v. Holman*, 58 Wis.2d 608, 619, 207 N.W.2d 660 (1973).

[4] This section was amended by sec. 19, ch. 377, Laws of 1977, as follows:

Any site which meets all state standards *and* is to be operated . . . *in accordance with an approved county plan* shall not be required to obtain *any local permits or authorization.* (Emphasis added.)

The DNR contends that the zoning ordinance prohibiting the use of agricultural lands for dumping grounds without written authorization from the Board establishes a "local permit or authorization" which need not be obtained within the meaning of the subsection. However, the meaning of the phrase in this subsection must be gleaned in light of the immediately preceding sections of the statutes dealing with the same subject.[5] Section 144.435, Stats. (1975),[6] authorizes counties to "prepare and adopt a county solid waste management plan consistent with state criteria," subject to the approval of the DNR. Section 144.44(2), Stats. (1975),[7] provides:

---

(1) Any *solid waste* site *or facility* which meets all state standards and is to be operated . . . in accordance with an approved county plan *under s. 144.435(2)* shall not be required to obtain any local permits or authorization.

[5] *Montreal Mining Co. v. State*, 155 Wis. 245, 247, 144 N.W. 195 (1913). *See also Tanck v. Clerk, Middleton Jt. School Dist.*, 60 Wis.2d 294, 304, 210 N.W.2d 708 (1973), and *Dept. of Natural Resources v. Clintonville*, 53 Wis.2d 1, 10–11, 291 N.W.2d 866 (1971).

[6] These provisions were left substantially intact by the legislature in 1977. The only substantial change is found in sec. 12, ch. 377, Laws of 1977, which deleted the requirement that the county plan must be submitted to the Department of Local Affairs and Development prior to submitting it to the Department of Natural Resources for final review, and added an absolute requirement that the DNR consult with "the appropriate regional planning commission or other planning agency" in reviewing county plans.

[7] Sec. 16, ch. 377, Laws of 1977, renumbers this section as 144.43(2), but makes no other change in the provision. Subsection (1) of sec. 144.43 which, for purposes of this appeal, is substantially identical in both its 1975 and 1977 versions (*see* sec. 11, ch. 377, Laws of 1977) requires the DNR to "prepare and adopt minimum standards for the location, design, construction,

Nothing in ss. 144.30 to 144.46 shall limit the authority of any local governing body to issue *licenses and permits* for any state-licensed sites or facilities or to *adopt*, subject to department approval, *standards for the location, design, construction, operation and maintenance* of solid waste disposal sites and facilities *more restrictive* than those adopted by the state under this section. (Emphasis added.)

Viewed together, these sections set forth a statutory scheme under which a county may, subject to DNR approval, promulgate a county waste management plan with more restrictive standards than those imposed by the state, and may, together with other local governmental units, exercise licensing authority with respect to those standards. But for the existence of sec. 144.445(1), Stats., then, a potential operator of a waste disposal site would have to apply for permits or licenses both from the DNR and from one or more local governing bodies even if it were willing to comply with both state and county standards.

We read sec. 144.445(1), Stats., as a means to allow applicants to avoid the duplicative effort and red tape delays inherent in proving their ability to meet state and local requirements before both state and local licensing officials. Under this provision, the DNR, which would have approved any applicable county plan under secs. 144.435(2) and 144.44(2), Stats., is implicitly charged with determining whether a proposed site is one which both meets state standards *and* "is to be operated . . . in accordance with an approved county plan," thus en-

sanitation, operation and maintenance of solid waste disposal sites and facilities . . . ." The legislature's action in 1977 in placing the subsection authorizing counties to license waste disposal sites and to adopt standards concerning the identical categories which the DNR is required to adopt is evidence of a legislative grant of concurrent jurisdiction to the DNR and counties to regulate waste disposal.

titling the applicant to bypass local authorities. Under this reading, the "local permits or authorization" thus avoided by the applicant are those authorized under secs. 144.435(2) and 144.44(2), and not the prohibitions or conditions in a zoning ordinance dealing generally with the use and development of county lands.

In this càse, Columbia County never adopted a plan for solid waste management under sec. 144.435, Stats., or a licensing ordinance or standards regulating waste disposal under sec. 144.44(2). Consequently, sec. 144.-445(1), does not apply, and the DNR had no authority under that subsection to avoid the provisions of the zoning ordinance.

The DNR contends that, even if sec. 144.445(1), Stats., does not relieve the City from obtaining the County's approval under the ordinance, the DNR has authority under sec. 144.445(2) to waive that requirement. Section 144.445(2) provides:

(a) *Notwithstanding* s. 144.44(2) [authorizing local licensing and more restrictive local standards], if a solid waste disposal site . . . is otherwise eligible for licensing *except for failure to obtain a local permit,* the department may, after notice and hearing, issue a license under s. 144.44 for the operation of said site. In issuing said license the department must find that the requirements of public health, safety and welfare require the waiver of *local approvals* as a condition precedent to issuance of a license.

(b) Any license issued under this section shall supersede *all local requirements.* However, operations licensed under this section may be required to render payments in lieu of local license or permit fees to the municipality in whose jurisdiction they lie not to exceed $100 per site per year. (Emphasis added.)

The DNR argues that the ordinance requiring written approval by the Board is either a "local approval" which may be waived by the DNR or a "local requirement"

which may be superseded by the DNR or both. We do not agree with this argument.

The waiver provision contained in subsection (a) was obviously created to enable the DNR to license sites "notwithstanding" the fact that a county or other local governing body had exercised its right to require higher than state standards under the authority of sec. 144.44 (2), Stats.[8] The use of the term "local approvals" in the second sentence of the subsection cannot be viewed as broadening the DNR's right to waive those local requirements to reach the approvals or prohibitions contained within a zoning ordinance promulgated under an entirely different legislative grant of authority.

Similarly, the use of the phrase "all local requirements" in sec. 144.445 (2) (b), Stats., must be construed to relate solely to the "requirements" imposed under sec. 144.44 (2), Stats. Under the statutory scheme, the more stringent local requirements will be superseded by a DNR license only when it is "issued under this section," that is, after the hearing and findings specified in subsection (a). The limited scope of the requirements which the DNR is authorized to supersede is further apparent from the second sentence of subsection (b) which entitles the county to collect "license or permit" fees despite the fact that its power to issue the license or permits autho-

---

[8] We believe this construction is clear from the plain meaning of the 1975 statute. It gains additional support from the legislature's clarifying amendment in sec. 19, ch. 377, Laws of 1977, which clearly delimits the DNR's power to waive "such" local approvals to those approvals the county may have chosen to require under sec. 144.44(2) (now sec. 144.43(2)). The text of sec. 144.445 (2), as amended, is as follows:

(a) Notwithstanding s. . . . *144.43*(2), if a solid waste disposal site . . . *or facility* is otherwise eligible for *construction and* licensing except for failure to obtain a local permit, the department may, *if it finds* after notice and hearing, . . . that the requirements of public health, safety and welfare *so* require . . . , *waive such* local approvals . . . .

rized under sec. 144.44 (2) has been voided by DNR action.

We conclude that the legislature has conferred no express authority on the DNR under sec. 144.445, Stats., or in any other provision of ch. 144, Stats., to contravene the county zoning ordinance prohibiting use of certain lands as a solid waste disposal site without prior approval of the Board. The question remains whether the DNR's power to do so is implicit from the provisions of ch. 144, taken as a whole, which confer paramount superintending power on the DNR to regulate solid waste disposal. *Wis. Environmental Decade, Inc. v. DNR,* 85 Wis.2d 518, 271 N.W.2d 69 (1978).

We agree with the DNR's assertion that the legislature has determined solid waste disposal to be a matter of statewide importance and concern. This is apparent not only from the composite statutory scheme set forth in secs. 144.30 to 144.46, Stats. (1975), and the detailed amendments to those sections in ch. 377, Laws of 1977, but also from the express declaration of policy in sec. 1, ch. 305, Laws of 1973, reciting the reasons for creating the Solid Waste Recycling Authority.[9] The statewide

[9] SECTION 1. **Legislative findings.** It is found and declared that the people of this state have the right to a clean and wholesome environment; that prevailing solid waste disposal practices generally, throughout the state, result in unnecessary environmental damage, waste valuable land and other resources, and constitute a continuing hazard to the health and welfare of the people of the state; that local units of government and the private solid waste management industry are becoming hard pressed to provide adequate services at reasonable costs, without damage or hazard to the environment and the loss of useful resources; that locally organized voluntary recycling programs have shown that solid wastes produced in the state contain recoverable resources; that technology and methods now exist to dispose of solid wastes and recover resources with commensurate environmental benefits; that coordinated large-scale processing of solid wastes is necessary in order to achieve maximum environmental and economic benefits for the people of the state; that

nature of this concern, which was recognized by the Wisconsin Supreme Court in *Wisconsin Solid Waste Recycling Auth. v. Earl*, 70 Wis.2d 464, 479–80, 235 N.W.2d 648 (1975), does not automatically indicate a legislative intention to preempt local policy determinations of local zoning authorities, however. Legislative recognition of the importance of these concerns is found from the Solid Waste Recycling Act itself, which provides:

Where any building, structure or facility is constructed for the benefit of or use of the authority, such construction shall not be subject to the ordinances or regulations of the municipality in which the construction takes place

the amounts of solid waste being produced within the state are adequate to sustain such large-scale processing; that the geography and population density of the state are such as to enable and facilitate the effective and economic regional accumulation of solid wastes; that present patterns of governmental organization and the rapidly increasing cost of financing solid waste management facilities greatly limit the ability of local government and the private solid waste management industry to construct and operate the large-scale processing plants needed to maximize environmental and economic benefits; that the development of systems and facilities and the use of the technology necessary to initiate large-scale processing of solid wastes are logical and necessary functions to be assumed by a state authority; that the provision of solid waste disposal services at reasonable cost, through a state authority, would supply valuable assistance to local units of government and the private solid waste management industry; that in establishing a Wisconsin solid waste recycling authority, the legislature is acting in all respects for the benefit of the people of this state to serve a public purpose in improving and otherwise promoting their health, welfare and prosperity and that the Wisconsin solid waste recycling authority, as created by this act, is empowered to act on behalf of the people of this state in serving this public purpose for the benefit of the general public; and that it is a valid public purpose to assist local units of government and the private solid waste management industry in providing the necessary systems, facilities, technology and services for solid waste management and resources recovery and to provide the necessary powers needed to accomplish these public purposes.

*except zoning* including without limitation because of enumeration, ordinances or regulations relating to materials used, permits, supervision of construction or installation, payment of permit fees, or other restrictions of any nature whatsoever. Sec. 499.45, Stats. (Emphasis added.)

Section 499.01(6), Stats., defines "municipality" to include a county.

In exempting the authority charged with administering a program of statewide importance from all local regulations and restrictions except zoning, the legislature has plainly stated its determination that local zoning considerations remain of major consequence even in the face of the statewide importance of solid waste disposal administration. In our view, the same legislative determination is inherent in the applicable sections of ch. 144. Nowhere in secs. 144.30 through 144.445, Stats., is the DNR given express authority to contravene local zoning ordinances. Its power to override local regulations is limited to the regulations of the same kind as it is authorized to make, and it is not authorized to zone local lands.

Section 144.31, Stats., sets forth the general powers and duties of the DNR with respect to solid waste management. Subsection (1)(c) of that section provides that it shall "[e]ncourage local units of government to handle air pollution and solid waste disposal problems within their respective jurisdictions . . . and provide technical and consultative assistance therefor." Subsection (2)(e) authorizes the DNR to "[a]dvise, consult, contract and co-operate with" other state agencies and local units of government, among others, to achieve the purpose of secs. 144.30 to 144.46 and 144.54, Stats. Section 144.43, Stats., requires the DNR to

prepare and adopt minimum *standards for the location,* design, construction, sanitation, operation and mainte-

nance of solid waste disposal sites and facilities and . . . adopt such *rules* relating to the *operation and mainte- nance* of solid waste disposal sites and facilities as it deems necessary . . . . (Emphasis added.)

The DNR has construed its own power to set "minimum standards for the location" of disposal sites in adopting such rules as Wis. Adm. Code sec. NR 151.12(4) and (6), which provide that no site shall be maintained with- in specified distances of lakes, rivers, highways, and residential areas.

The power of the DNR to set minimum standards gen- erally applicable to the location of sites, and to license specific facilities which meet those standards, is funda- mentally different from the power of a county to zone its lands set forth in sec. 59.97(1), Stats. That section provides:

It is the purpose of this section to promote the public health, safety, convenience and general welfare; *to en- courage planned and orderly land use development;* to protect property values and the property tax base; to permit the careful planning and efficient maintenance of highway systems; to insure adequate highway, utility, health, educational and recreational facilities; to recog- nize the needs of agriculture, forestry, industry and business in future growth; to encourage uses of land and other natural resources which are in accordance with their character and adaptability; to preserve wetlands; to conserve soil, water and forest resources; to protect the beauty and amenities of landscape and man-made developments; to provide healthy surroundings for family life; and to promote the efficient and economical use of public funds . . . . (Emphasis added.)

In exercising its zoning authority under this section, the county is required to consider a much broader range of local concerns than those addressed in ch. 144, Stats. Zoning officials charged with planning the long range growth and development of their own communities are

arguably, if not presumably, in a better position than a state agency to weigh the competing factors of those concerns and evaluate the present and future impact of locating a solid waste disposal facility within a particular region of the community.

The DNR asserts that to hold that it has no authority to veto local zoning ordinances prohibiting sanitary waste disposal sites in certain areas will lead to a mushrooming of such ordinances forbidding the use of all local land for waste disposal and a consequent frustration of legislative purpose. We will be "up to our ears" in undisposable garbage, it argues, since "nobody loves a dump." This argument presupposes bad faith on the part of local units of government which the legislature has refused to echo or share to the present date.

The legislature provided in sec. 59.97(13) that the zoning powers conferred on the county in that section "shall be liberally construed in favor of the county exercising them." In the same act which created secs. 144.435 and 144.445, it created sec. 59.07(135), which conferred substantial and detailed powers on the county to establish and operate solid waste management systems or to participate jointly in such systems with other municipalities. Sec. 1, ch. 130, Laws of 1971. In its detailed 1977 amendments to these and related provisions of the statutes, the legislature mandated the greater involvement of local units of government in DNR licensing procedures by, *e.g.*, requiring the DNR to give notice and information as to each application for site approval to each municipality "with zoning jurisdiction over the proposed site . . . [or] within whose boundaries any portion of the proposed site will be located, or which could be substantially affected by the operation of the proposed site." Section 17, ch. 377, Laws of 1977. It also gave the DNR express authority to waive application of local ordinances or resolutions which inhibit the ability

of an applicant to obtain data required to be submitted to the DNR in preliminary reports, but omitted to grant any similar authority with respect to local zoning ordinances prohibiting the location of waste disposal sites within certain geographic territory. This omission, in light of its specific attention to "zoning authorities" and the DNR waiver powers, can hardly have been inadvertent.

We view the history of the legislature's enactments in the field of solid waste disposal as its recognition that state and local units of government share the same concerns for safe, sanitary, environmentally sound, and convenient disposal of waste. Though it gave the DNR central and preemptive power to license and supervise maintenance and operation of specific facilities, and to promulgate uniform general standards for location of sites and general rules of regulation, it left with the county the traditional powers of planning and developing community lands according to the long range goals of the local community. These powers do not inherently conflict. *La Crosse Rendering Works v. La Crosse*, 231 Wis. 438, 285 N.W. 393 (1939) ; *Fox v. Racine*, 225 Wis. 542, 275 N.W. 513 (1937).

We cannot presume that municipal governments, acting on behalf of their citizens, would arbitrarily "zone out" the areas of land under their control so as to prevent the location of safe and convenient disposal sites anywhere within their constituent communities. It is doubtful whether any such attempt could be sustained under the appropriate standards of judicial review.

The DNR has brought to our attention the recent case of *Wis. Environmental Decade, Inc. v. DNR*, 85 Wis.2d 518, 271 N.W.2d 69 (1978), which was decided after oral arguments in this case. That case involved a city council resolution entirely prohibiting the chemical treatment for weed control of all lakes within the City of Madison. The

court found that the city's policy was in diametrical con-flict with a statute authorizing the DNR to "supervise" and to grant permits for such treatment of waters throughout the state, as that statute was implemented by the DNR. It held that the legislation relating to use and control of navigable waters manifested a clear legislative intent to place central and preemptive power in the DNR as the "central unit of state government" charged with administering the "public trust" in all navigable waters in the state. The resolution was consequently held to be invalid.

That case is not on point with this case. The legislative authority granted to the DNR with respect to solid waste disposal sites stops well short of its authority with respect to navigable waters. The zoning ordinance here in question does not purport to totally " 'forbid what the legislature has expressly licensed' "[10] or " 'infringe the spirit of a state law or . . . general policy of the state.' "[11] Columbia County has made no attempt to "zone out" the use of all lands within its boundaries as waste disposal sites, but merely to preclude such use of lands zoned "agricultural" without prior county approval.

In this case, Columbia County's refusal to condone the conditionally prohibited use of a specific eighty acre parcel of agricultural land was upheld by the circuit court as being neither arbitrary nor capricious. The decision of that court was not appealed. Unless and until the legislature wishes to grant the DNR the power to veto such local zoning determinations, as it has em-powered the DNR to override local prohibitions in the area of navigable waters, such zoning policies are subject to review by the courts, and not by the DNR.

*By the Court.*—Reversed.

---

[10] *Wis. Environmental Decade, Inc. v. DNR,* 85 Wis.2d 518, 529, 271 N.W.2d 69 (1978), quoting *Fox v. Racine,* 225 Wis. 542, 545, 275 N.W. 513 (1937).

[11] *Id.* at 534, quoting *Fox,* 225 Wis. 542, 545.