La CROSSE FOOTWEAR, INC., Plaintiff-Respondent,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Defendant-Appellant,

Michael G. THORSEN, Defendant.†

Court of Appeals

*No. 88–0032. Submitted on briefs June 24, 1988.—Decided November 3, 1988.*

(Also reported in 434 N.W.2d 392.)

† Petition to review denied. BABLITCH, J., took no part.

For the defendant-appellant the cause was submitted on the briefs of *Robert C. Reed*, of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Thomas S. Sleik* and *Hale, Skemp, Hanson & Skemp*, of La Crosse.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J.   On this appeal we decide that the Labor and Industry Review Commission, acting under sec. 108.09(6)(c), Stats., may on its own motion set aside a decision of a department administrative law judge on grounds of mistake of law. We also decide that LIRC correctly construed sec. 108.02(26), Stats., defining wages, to include in Thorsen's base-period wages the 1984 profit-sharing distribution paid to him by his employer, La Crosse Footwear, Inc. We therefore reverse the judgment of the circuit court.

## I.

## BACKGROUND

In July 1985 the Department of Industry, Labor and Human Relations requested from La Crosse Footwear Thorsen's "base period," (secs. 108.02(4) and 108.06(4), Stats.), work history from July 8, 1984 to July 6, 1985. The payroll supervisor reported wages of $4,713.40. As a result of a random audit, the department increased the base-period wage for computation of unemployment benefits by $426, Thorsen's portion of the 1984 profit-sharing distribution. A department deputy issued an initial determination that Thorsen's base-period wages included his income from the profit-sharing distribution. La Crosse Footwear appealed. A department administrative law judge held that the profit-sharing distribution was not part of Thorsen's

base-period wages. The department petitioned LIRC for review. La Crosse Footwear moved to dismiss the petition. LIRC held that sec. 108.09(6)(e), Stats., did not authorize the department to petition for review of the judge's decision. On its own motion, however, LIRC, acting under sec. 108.09(6)(c), Stats., reversed the determination of the administrative law judge.

## II.

## LIRC'S AUTHORITY UNDER SEC. 108.09(6)(c), STATS.

Section 108.09(6)(c), Stats., provides:

> On its own motion, for reasons it deems sufficient, the commission may set aside any final deputy's determination or appeal tribunal or commission decision within one year from the date thereof upon grounds of mistake or newly discovered evidence, and take action under par. (d).

Paragraph (d) provides:

> In any case before this commission for action under this subsection, the commission may affirm, reverse, modify or set aside the decision on the basis of the evidence previously submitted, may order the taking of additional evidence as to such matters as it may direct, or it may remand the matter to the department for further proceedings.

The trial court held that LIRC's authority under sec. 108.09(6)(c), Stats., to act upon grounds of mistake is limited to mistakes of fact and not mistakes of law.

The meaning of a statute is a question of law which we decide independently of the trial court's conclusion or the commission's determination. *Rev.*

*Dept. v. EAA Aviation Foundation,* 143 Wis. 2d 681, 684, 422 N.W.2d 458, 459 (Ct. App. 1988). Deference to the agency is not appropriate where this court is as competent as is the agency to construe a statute. *Schachtner v. DILHR,* 144 Wis. 2d 1, 4, 422 N.W.2d 906, 908 (Ct. App. 1988). Because LIRC's interpretation of sec. 108.09(6)(c), Stats., does not depend on the exercise of a particular administrative expertise, we are as competent as is LIRC to construe the statute.

We conclude that the statute is ambiguous. A statute is ambiguous if it may be construed in different ways by reasonably well-informed persons. *EAA Aviation,* 143 Wis. 2d at 684, 422 N.W.2d at 460. A reasonably well-informed person could construe sec. 108.09(6)(c), Stats., as did the trial court, as applying only to mistakes of fact. An equally well-informed person could, however, conclude that the statute includes mistakes of law.

"The guiding principle of statutory construction is to determine the intent of the legislature." *State v. Vonesh,* 135 Wis. 2d 477, 482, 401 N.W.2d 170, 173 (Ct. App. 1986). (Citations omitted.) To determine the legislative meaning of "mistake" as used in sec. 108.09(6)(c), Stats., we may look to the construction of related statutes. *McGraw-Edison Co. v. ILHR Dept.,* 72 Wis. 2d 99, 105, 240 N.W.2d 148, 151–52 (1976).

We look to sec. 102.18(4)(c), Stats.,[1] of the Worker's Compensation Act because the authority conferred

---

[1]Section 102.18(4)(c), Stats., provides:

> On its own motion, for reasons it deems sufficient, the commission may set aside any final order or award of the commission or examiner within one year after the date of the order or award, upon grounds of mistake or newly discovered evidence, and, after further consideration, do any of the following:

thereunder upon LIRC is substantially the same as that conferred by sec. 108.09(6)(c), Stats. LIRC has program responsibilities under the Worker's Compensation Act which are substantially the same as its program responsibilities under the Unemployment Compensation Act. Sec. 15.221(2), Stats. We also look to sec. 102.18(4)(c), Stats., because that statute has been construed by the Wisconsin Supreme Court.

The predecessor statute to sec. 102.18, Stats., sec. 2394–17, Stats. 1913, provided: "The [industrial] commission may on its own motion, modify or change its order, findings or award at anytime within ten days from the date thereof if it shall discover any mistake therein." Ch. 599, Laws of 1913. In *Jordan v. Weinman,* 167 Wis. 474, 477, 167 N.W. 810, 812 (1918), the court gave sec. 2394–17, a broad construction. The court said: "The power to modify [an] original award was given to the *Commission* for a well defined and beneficent purpose, and the provision should be given no narrow construction."

In *Welhouse v. Industrial Commission,* 214 Wis. 163, 164, 252 N.W. 717, 718 (1934), the court said: "The terms 'mistake' and 'newly discovered evidence' [in sec. 102.18] have well-defined and well-understood meanings in the law." The court noted that trial courts were authorized to review judgments upon the grounds of mistake and newly discovered evidence. *Id.* at 165, 252 N.W.2d at 718. Such authority in trial courts was well established when sec. 102.18, Stats., was enacted. R.S. 1858, c. 125, sec. 38, provided:

1. Affirm, reverse or modify, in whole or in part, the order or award.
2. Reinstate the previous order or award.
3. Remand the case to the department for further proceedings.

424

> The court may ... in its discretion, and upon such terms as may be just ... at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding against him through his mistake, inadvertence or surprise, or excusable neglect ....

In the 1878 revision, this section was renumbered sec. 2832. *See* Supp. R.S. 1878 at xxviii. The statute was again renumbered sec. 269.46, ch. 4, Laws of 1925, and is now included in sec. 806.07, Stats.

In *Main v. McLaughlin,* 78 Wis. 449, 47 N.W. 938 (1891), the court held that sec. 2832, R.S. 1878, contemplated a mistake of fact, not of law. *Main* was, however, effectively overruled in *Pashong v. Hollenbeck,* 13 Wis. 2d 415, 422, 108 N.W.2d 668, 672 (1961), where the court said: "Section 269.46(1), Stats., does not expressly provide what kind of a mistake the court may relieve from and, to fulfill its equitable purpose, should not be restricted to mistakes of fact." We conclude from *Welhouse* that "mistake," as used in sec. 102.18(4)(c), is to be given the same construction as the courts have given "mistake" as used in what is now numbered sec. 806.07, Stats. Thus, "mistake" as used in sec. 102.18(4)(c) is not restricted to mistakes of fact. We apply the same construction to "mistake" as used in sec. 108.09(6)(c) because the statutes are related.

The Unemployment Compensation Act is remedial in nature and should be liberally construed.[2]

---

[2]Section 108.01(1), Stats., declares the public policy of the state as follows:

425

*Princess House, Inc. v. DILHR,* 111 Wis. 2d 46, 62, 330 N.W.2d 169, 177 (1983). The public policy of the statute is furthered by a construction of sec. 108.09(6)(c), Stats., which authorizes LIRC to promptly correct errors of any nature which may affect unemployment compensation coverage for workers who are economically dependent upon others in respect to their wage-earning status. We therefore conclude that LIRC, acting under sec. 108.09(6)(c), was empowered to set aside the administrative law judge's decision upon the grounds that the judge had made an error of law.

## III.

## PROFIT-SHARING DISTRIBUTION AS WAGES

Section 108.02(26), Stats., defines "wages" as follows:

> "Wages" means every form of remuneration payable for a given period ... to an individual for personal services, including salaries, commissions, vacation pay, dismissal wages, bonuses, tips and the reasonable (actual or estimated average) value of board, rent, housing, lodging, payments in kind, and any other similar advantage received from the individual's employing unit or directly with respect to work for it ....

---

Unemployment in Wisconsin is recognized as an urgent public problem, gravely affecting the health, morals and welfare of the people of this state. The burdens resulting from irregular employment and reduced annual earnings fall directly on the unemployed worker and his family. The decreased and irregular purchasing power of wage earners in turn vitally affects the livelihood of farmers, merchants and manufacturers, results in a decreased demand for their products, and thus tends partially to paralyze the economic life of the entire state.

LIRC argues that the catch-all clause "any other similar advantage received from the individual's employing unit or directly with respect to work for it" modifies "every form of remuneration payable for a given period." La Crosse Footwear argues that the clause modifies "the reasonable ... value of board, rent, housing, lodging, payments in kind." We agree with LIRC's construction.

In *Transportation Dept. v. LIRC,* 122 Wis. 2d 358, 360, 361 N.W.2d 722, 723–24 (Ct. App. 1984), we held that the catch-all clause included salaries and wages received while the employees were taking compensatory time off. We said: "Because compensatory time off is similar to a paid vacation, it is appropriate to construe 'wages' to include salaries and benefits the defendants received while they were taking compensatory time off." *Id.* at 360–61, 361 N.W.2d at 724. (Citation omitted.) We conclude that we properly construed sec. 108.02(26), Stats., when we applied the modifying clause to "every form of remuneration payable for a given period."

A profit-sharing distribution is an advantage "similar" to a bonus. Thorsen's 1984 profit-sharing distribution was paid to him pursuant to a labor agreement. The Wisconsin Supreme Court has characterized a profit-sharing plan as "constituting an offer of the stated benefits in exchange for the service of an employee, and upon the employee's completion of the required services, a binding contract is formed under which the employer is obligated to deliver the benefits under the terms of the plan." *Compton v. Shopko Stores, Inc.,* 93 Wis. 2d 613, 625, 287 N.W.2d 720, 725–26 (1980) (citations omitted). A profit-sharing distribution is therefore remuneration for personal

services. Once La Crosse Footwear earned a profit for 1984 subject to the profit-sharing plan, Thorsen became entitled to a distribution for services rendered in 1984. Therefore the distribution was remuneration "payable for a given period."

*By the Court.*—Judgment reversed.

DYKMAN, J. (concurring). In Hewitt, *The Scope of Judicial Review of Administrative Agency Decisions in Wisconsin,* 1973 Wis. L. Rev. 554, the author concluded that inconsistent application of several standards of judicial review of administrative agency conclusions had resulted in confusion. Uniform application of the law was therefore difficult for agencies, the bench and the bar. In the fifteen years since this article was published, the problem has continued. We still use varying standards, without explanation as to why a particular standard is used. The majority continues this practice.

A deferential standard of review is appropriate for judicial review of administrative agency conclusions because a board or commission has expertise, and is more likely to be familiar with developments in the area of the law it administers. I would therefore affirm LIRC, not because I agree with its constructions of secs. 108.09(6)(c) and 108.02(26), Stats., but because its conclusions are reasonable. That is the standard we used in *Lewandowski v. State,* 140 Wis. 2d 405, 409, 411 N.W.2d 146, 148 (Ct. App. 1987), and a better rule.