In the Matter of the Arbitration Among:

Madison Landfills, Inc., Plaintiff-Respondent,†

v.

The Libby Landfill Negotiating Committee,
Defendant-Appellant.

Court of Appeals

*No. 92–1731. Oral argument June 29, 1993.—Decided October
28, 1993.*

(Also reported in 509 N.W.2d 307.)

†Petition to review granted.

817

For the defendant-appellant the cause was submitted on the briefs of *David B. Billing, Kim Grimmer,* and *Don M. Millis* of *Ross & Stevens* of Madison, and *Jerre Ziebelman,* Asst. Corporation Counsel, for the *County of Dane* and orally argued by *David B. Billing.*

For the plaintiff-respondent the cause was submitted on the briefs of *William E. Callahan, Jr., Peter J. Ruud, Brett K. Miller* of *Davis & Kuelthau* of Milwaukee and orally argued by *William E. Callahan.*

Brief of Amicus Curiae submitted on behalf of the Wisconsin Chapter of the National Solid Wastes Management Association, *Robert H. Friebert, William S. Roush, Jr.,* and *Caren B. Goldberg* of *Friebert, Finerty & St. John, S.C.* of Milwaukee.

Brief of Amicus Curiae submitted on behalf of Wisconsin's Environmental Decade, Inc., Sierra Club-John Muir Chapter and Wisconsin Public Intervenor, *Lawrence E. Classen* and *Thomas J. Dawson* of Madison.

Brief of Amicus Curiae submitted on behalf of the Wisconsin Towns Association, *Thomas W. Harnisch* of Madison.

Brief of Amicus Curiae submitted on behalf of Wisconsin Counties Association, *Robert W. Mulcahy, Charles V. Sweeney, Lisa S. Keyes* of *Michael, Best & Friedrich* of Madison.

Brief of Amicus Curiae submitted on behalf of League of Wisconsin Municipalities, *Curtis A. Witynski* of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J.    Madison Landfills, Inc. (MLI) proposes to locate a solid waste disposal facility at a site in the Town of Blooming Grove, Dane County, known as the Libby Landfill. The Department of Natural

Resources (DNR) issued MLI a favorable determination of feasibility on January 15, 1991. However, a solid waste disposal facility is not a permitted use in the A-1 Exclusive Agriculture zoning district where the Libby Landfill site is located. In arbitration under the Waste Facility Siting Law[1] with the Libby Landfill Negotiating Committee, the Waste Facility Siting Board adopted MLI's final offer as its award, but deleted an item which would have made the zoning restriction inapplicable to MLI's proposed facility.

The circuit court vacated the board's award and remanded the matter for further arbitration. The court concluded that the Waste Facility Siting Law did not authorize the board to delete from MLI's final offer an item which made local approvals inapplicable to MLI's solid waste disposal facility. The court further concluded that the board erred when it determined that certain operational concerns were arbitrable. The committee appeals.

## DECISION

We reverse the circuit court's order insofar as it vacated that part of the board's award deleting from MLI's final offer the item making local approvals inapplicable to MLI's proposed facility. We also reverse the court's order insofar as it set aside the board's determination that certain operational concerns were arbitrable under sec. 144.445(8)(b), Stats. However, we affirm the court's order determining that the board erred when it concluded that "source of waste" was an arbitrable item.

On remand, the circuit court shall direct a rehearing by the board under sec. 788.10(2), Stats., consistent

---

[1] Section 144.445, Stats.

with this opinion. In making its award, the board may incorporate and rely on the record previously made in the arbitration proceedings under sec. 144.445(10), Stats.

## THE ISSUES

The committee and MLI present the following issues:

(1) Did sec. 144.445(10)(p), Stats., permit the board in its award to delete from MLI's final offer the following item: "Any and all preexisting local approvals shall be deemed not applicable"? We conclude that the board properly deleted this provision because it found that the preexisting local approval which MLI sought to make inapplicable—the Dane County zoning ordinance—was neither arbitrary nor discriminatory.[2]

(2) Did the board err when it determined that the following items were arbitrable under sec. 144.445(8)(b), Stats.: (a) landfill liner and cap design; (b) source of waste; (c) design of landfill gas control system; and (d) environmental monitoring and testing? We conclude that the board erred when it determined that source of waste is an "operational concern" subject to arbitration.

## BACKGROUND

On February 22, 1985, MLI requested Dane County to inform it of all local approvals applicable to its proposal to construct and operate a solid waste disposal facility at the Libby Landfill site. Section 144.44(1m)(b), Stats. The county zoning administrator

---

[2] Whether the board correctly decided that the exclusion of solid waste disposal facilities from the A-1 Exclusive Agriculture district is not arbitrary and discriminatory is not before us.

responded that the site was in a district zoned A-1 Exclusive Agriculture under the Dane County zoning ordinance, in which a solid waste disposal facility is not a permitted use. The zoning administrator advised MLI that it would have to apply for A-2 zoning and a conditional use permit. On January 3, 1986, MLI petitioned the county board for rezoning and a conditional use permit.[3]

The Dane County Zoning and Natural Resources Committee tabled MLI's petition at its February 25, 1986 meeting. MLI's amended petition was considered by the zoning committee February 10, 1992. On March 30, 1992, the committee voted to not recommend MLI's amended petition and on April 2, 1992, the Dane County Board of Supervisors unanimously denied its petition.[4]

Prior to August 1985, Dane County, the City of Madison, and the Town of Dunn formed the Libby Landfill Negotiating Committee. The committee was formed in accordance with sec. 144.445(7), Stats. Also prior to August 1985, MLI submitted a feasibility report to DNR. Section 144.44(2)(a), Stats. DNR issued MLI a favorable determination of feasibility January 15, 1991.[5]

---

[3] The Dane County Agriculture and Natural Resources Committee hears applications for rezoning and, where necessary, conditional use permits simultaneously, to avoid the inconvenience and expense of separate hearings.

[4] On April 27, 1992, MLI brought a certiorari action to review the board's denial of its petition. It appealed the circuit court's adverse decision to this court. *See State ex rel. Madison Landfills, Inc. v. Dane County, Wisconsin,* No. 93-0185.

[5] On February 28, 1990, DNR determined that MLI's proposal was conditionally environmentally feasible, but denied approval because the applicant did not qualify under sec. 144.44

MLI and the committee negotiated unsuccessfully until February 1989, when MLI petitioned the board for arbitration. The board denied the petition and directed that the parties continue mediation and arbitration. In January 1990, MLI refiled its petition. The board suspended arbitration until DNR disposed of MLI's amended feasibility report.

On May 15, 1991, at MLI's request, the board ordered the parties to file final offers. On July 16, 1991, the board issued a determination of arbitrability pursuant to Wis. Adm. Code sec. WFSB 10.07. Both parties filed final offers on August 12, 1991. On September 10, 11, and 12, 1991, the board held a public meeting and heard testimony and considered briefs as to the offers. The board issued its award November 7, 1991.

## I.

## LOCAL APPROVALS

The board's order provides:

> Local Approvals. . . . The Board deletes section 4 [of MLI's final offer], that reads: "Any and all pre-existing local approvals[6] shall be deemed not applicable." The legislature intended the negotiation-

---

(4r), Stats. (the "bad actor" statute). After MLI satisfied DNR's objection, DNR issued its determination. MLI, the Town of Dunn, Dane County and the Wisconsin Alumni Research Foundation petitioned for review of DNR's February 28, 1990 order. On November 5, 1991, the circuit court dismissed their petitions. We decide the consolidated appeal from the circuit court's orders in a related decision, issued today in *Madison Landfills, Inc. v. DNR,* No. 92-0326 (Wis. Ct. App. Oct. 28, 1993).

[6] " 'Preexisting local approval' means a local approval in effect at least 15 months prior to the submission to the department of either a feasibility report under s.144.44(2) or an initial

arbitration process, to assure, among other things, that "arbitrary or discriminatory policies and actions of local governments which obstruct the establishment of solid waste disposal facilities . . . can be set aside." [S]ec. 144.445(2)(a), Wis. Stats. The legislature's declaration allows the Board to set aside arbitrary or discriminatory local approvals that obstruct the establishment of solid waste facilities. Thus it follows that the Board lacks authority to set aside local approvals that are neither arbitrary nor discriminatory. *Here the Board finds the local zoning regulations applied to this case at this time are neither arbitrary nor discriminatory.* [Emphasis added.]

The circuit court concluded that the board could have adopted MLI's final offer which made all local approvals inapplicable. The circuit court found the language of sec. 144.445, Stats., "clear, plain and unambiguous." The court said:

Certainly, the language of [sec. 144.445] (2)(a) is broad enough to include local approvals, but to rely upon the language of this section to restrict the Board's arbitration power to only negate those policies and actions which they find to be arbitrary and discriminatory is not in harmony with the overall intent and plain meaning of the statute. For instance, Sec. 144.445(2)(b) provides:

"The legitimate concerns of nearby residents and affected municipalities can be expressed in a public forum, negotiated and, if need be, arbitrated with the applicant in a fair manner and reduced to a written document that is legally binding."

site report, whichever occurs first." Section 144.445(3)(fm), Stats.

> If local concerns can be expressed in a public forum, through a local committee in negotiations, mediation and, if need be, arbitration, why then would it make any sense to give local government through local approvals the ultimate veto power over the siting of landfills which are of statewide concern?

We do not read sec. 144.445, Stats., to give local governments "ultimate veto power over the siting of landfills." We conclude, as did the board, that the board has the power to hear evidence and argument, and set aside a local approval which arbitrarily or discriminatorily obstructs the establishment of solid waste disposal and hazardous waste facilities. Section 144.445(2)(a), Stats. That authority does not, however, extend to *reasonable* policies or actions of local governments.

We do not agree with the trial court that the provisions of the Waste Facility Siting Law are "clear, plain and unambiguous." A statute is ambiguous if reasonably well-informed people can interpret it in two or more ways. *Ervin v. City of Kenosha*, 159 Wis. 2d 464, 472, 464 N.W.2d 654, 657-58 (1991). However, reasonably well-informed persons may differ as to the authority of the board to delete a provision waiving local approvals from a final offer. Reasonably well-informed persons may also differ as to the "operational concerns" which are arbitrable under sec. 144.445(8)(b), Stats.

The meaning of a statute is a question of law which we decide independently of the trial court's conclusion or the board's determination. *La Crosse Footwear, Inc. v. LIRC*, 147 Wis. 2d 419, 422, 434 N.W.2d 392, 393 (Ct. App. 1988). The committee argues that a different standard of review applies to an arbitrator's resolution

of a question of law. *See City of Madison v. Madison Professional Police Officers Ass'n,* 144 Wis. 2d 576, 586, 425 N.W.2d 8, 11 (1988) (arbitrator's award will not be overturned for error of law not amounting to perverse misconstruction or manifest disregard of the law, unless award is illegal or violates strong public policy). However, this principle applies in arbitration pursuant to contract where the parties mutually agree upon an arbitrator to decide all issues between them; it does not apply to statutory arbitration where the powers of the arbitrator are defined by statute. The decision of an agency regarding the scope of its own powers does not bind us. *Topp v. LIRC,* 133 Wis. 2d 422, 425, 395 N.W.2d 815, 817 (Ct. App. 1986). We are as competent as the board to construe the statute prescribing its authority to make an arbitration award. *See La Crosse Footwear,* 147 Wis. 2d at 423, 434 N.W.2d at 393-94 (if agency's interpretation of statute does not depend on administrative expertise, court does not defer to agency's view).

■

The goal of statutory interpretation is to determine and give effect to the legislature's intent. *Caldwell v. Percy,* 105 Wis. 2d 354, 361, 314 N.W.2d 135, 140 (Ct. App. 1981). We begin our search for the legislature's intent by examining the language of sec. 144.445, Stats., and related statutes. *Id.*

Section 144.445(10)(p), Stats., provides in part:

> The arbitration award shall adopt, without modification, the final offer of either the applicant or the local committee except that the arbitration award shall delete those items which are not subject to arbitration under sub. (8) *or are not consistent with*

*the legislative findings and intent under subs. (1) and (2).*[7] [Emphasis added.]

[7] Section 144.445(1), Stats., provides:

(a)  The legislature finds that the creation of solid and hazardous waste is an unavoidable result of the needs and demands of a modern society.

(b)  The legislature further finds that solid and hazardous waste is generated throughout the state as a by-product of the materials used and consumed by every individual, business, enterprise and governmental unit in the state.

(c)  The legislature further finds that the proper management of solid and hazardous waste is necessary to prevent adverse effects on the environment and to protect public health and safety.

(d)  The legislature further finds that the availability of suitable facilities for solid waste disposal and the treatment, storage and disposal of hazardous waste is necessary to preserve the economic strength of this state and to fulfill the diverse needs of its citizens.

(e)  The legislature further finds that whenever a site is proposed for the solid waste disposal or the treatment, storage or disposal of hazardous waste, the nearby residents and the affected municipalities may have a variety of legitimate concerns about the location, design, construction, operation, closing and long-term care of facilities to be located at the site, and that these facilities must be established with consideration for the concerns of nearby residents and the affected municipalities.

(f)  The legislature further finds that local authorities have the responsibility for promoting public health, safety, convenience and general welfare, encouraging planned and orderly land use development, recognizing the needs of industry and business, including solid waste disposal and the treatment, storage and disposal of hazardous waste and that the reasonable decisions of local authorities should be considered in the siting of solid waste disposal facilities and hazardous waste facilities.

(g)  The legislature further finds that the procedures for the siting of new or expanded solid waste disposal facilities and hazardous waste facilities under s. 144.44, 1979 stats., and s. 144.64, 1979 stats., are not adequate to resolve many of the conflicts which arise during the process of establishing such facilities.

Section 144.445(2), Stats., provides:

It is the intent of the legislature to create and maintain an effective and comprehensive policy of negotiation and arbitration

826

Each party selects, from sec. 144.445(1) and (2), Stats., the legislative findings and statements of intent which it claims supports its position. The committee emphasizes sec. 144.445(2)(a), Stats., which provides: "Arbitrary or discriminatory policies and actions of local governments which obstruct the establishment of solid waste disposal facilities and hazardous waste facilities *can be set aside.*" (Emphasis added.) The committee further points to sec. 144.445(1)(f), Stats., where the legislature finds that "the reasonable decisions of local authorities should be considered in the siting of solid waste disposal facilities and hazardous waste facilities." The committee argues that it is clear from this language that the legislature intended that the board could approve a final offer waiving preexisting local approvals only if such approvals are arbitrary, discriminatory or unreasonable. The cited provisions support the committee's position.

MLI, however, points to the legislative finding "that the availability of suitable facilities for solid waste disposal and the treatment, storage and disposal of hazardous waste is necessary to preserve the economic strength of this state and to fulfill the diverse

---

between the applicant for a license to establish either a solid waste disposal facility or a hazardous waste treatment, storage or disposal facility and a committee representing the affected municipalities to assure that:

(a) Arbitrary or discriminatory policies and actions of local governments which obstruct the establishment of solid waste disposal facilities and hazardous waste facilities can be set aside.

(b) The legitimate concerns of nearby residents and affected municipalities can be expressed in a public forum, negotiated and, if need be, arbitrated with the applicant in a fair manner and reduced to a written document that is legally binding.

(c) An adequate mechanism exists under state law to assure the establishment of environmentally sound and economically viable solid waste disposal facilities and hazardous waste facilities.

needs of its citizens." Section 144.445(1)(d), Stats. MLI also notes that sec. 144.445(5)(a), Stats., provides that: "The establishment of facilities is a matter of statewide concern." MLI argues that this language makes clear that it is the reasonableness of the overall offer that the board must focus on in choosing one final offer over the other. MLI's position is that when the legislature made the applicability of any preexisting local approval subject to arbitration, sec. 144.445(8)(b)7, Stats., it made *all* preexisting local approvals arbitrable, including those which are reasonable. MLI argues that if the legislature had intended to limit the arbitrability of preexisting local approvals to arbitrary or discriminatory preexisting local approvals, it would have said so.

We reject MLI's construction of sec. 144.445(10)(p), Stats., as inconsistent with the legislative findings and intent and the plain language of the statute. If the board must select the final offer which is the more reasonable *overall*, the board could select an offer which required the applicant to obtain a preexisting local approval which was arbitrary, discriminatory or unreasonable. This is an unreasonable construction of the Waste Facility Siting Law which we reject. *In re Dewerth*, 132 Wis. 2d 29, 42, 390 N.W.2d 575, 580 (Ct. App. 1986), *aff'd*, 139 Wis. 2d 544, 407 N.W.2d 862 (1987). Further, MLI's suggested approach would not give effect to the direction in sec. 144.445(10)(p) that the arbitration award "shall" delete those items from a final offer which are inconsistent with the legislative findings and intent under subsecs. (1) and (2). We must construe a statute so that no part of it is rendered superfluous. *Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 250, 493 N.W.2d 68, 76 (1992).

The trial court asked: "Why create a State Waste Facility Siting Board with statewide powers to address resolution of matters of statewide concern, if it can be rendered powerless to address the problems it was designed to help solve?" There are two unwarranted assumptions in this question: first, that the board was created to override *all* local approvals which exclude a solid waste disposal facility from a site selected by the applicant; and second, that the board is powerless to address the problems it was designed to help solve.

The history of the Waste Facility Siting Law does not support the trial court's first assumption. As to the court's second assumption, the board concluded in this case that the Dane County zoning ordinance was not arbitrary, discriminatory or unreasonable. In another case, however, it may conclude that a local approval *is* arbitrary, discriminatory or unreasonable. The Waste Facility Siting Law gives the board the power to override a local approval which it finds arbitrary, discriminatory or unreasonable.

These considerations aside, the answer to the trial court's question lies in the political process. The impetus for legislative action was provided by our decision in *Nelson v. DNR*, 88 Wis. 2d 1, 276 N.W.2d 302 (Ct. App. 1979), *aff'd*, 96 Wis. 2d 730, 292 N.W.2d 655 (1980). In *Nelson*, we held that sec. 144.445, Stats. (1975), did not empower DNR to override all local policy determinations as to the location of solid waste disposal sites, including those policies expressed in zoning ordinances. *Id*. at 16, 276 N.W.2d at 309. We said: "Unless and until the legislature wishes to grant the DNR the power to veto . . . local zoning determinations, . . . such zoning policies are subject to review by the courts, and not by the DNR." *Id*.

Efforts were made to give DNR veto power over local zoning ordinances. On September 26, 1980, Wisconsin Legislative Council staff prepared a draft bill amending sec. 144.445(1) and (2), Stats. (1979), to authorize DNR to waive any local approval if a solid waste disposal facility was otherwise eligible for construction and licensing. The prefatory note to the draft stated: "This bill amends [section 144.445] to provide a comprehensive override of all local requirements pertaining to solid waste disposal sites or facilities, including zoning ordinances, thereby reversing the result of the *Nelson* case." However, this pre-emptive approach did not survive the political process.

On December 7, 1981, the Assembly Committee On Environmental Resources introduced 1981 Assembly Bill 936, which created the Waste Facility Siting Board and repealed and recreated sec. 144.445, Stats. (1979), to prescribe a negotiation and arbitration process to resolve differences between an applicant for a license and affected municipalities. Under 1981 Assembly Bill 936, the applicability of any preexisting local approval was not subject to arbitration. Subdivision 7 was added to sec. 144.445(8)(b) by Assembly Substitute Amendment 4, which made the applicability or nonapplicability of any preexisting local approval subject to arbitration. Assembly Substitute Amendment 4 was adopted by the Assembly and the Senate, with amendments not relevant here.

The Legislative Council staff prepared a summary of Assembly Substitute Amendment 4 to 1981 Assembly Bill 936 which compared the provisions of the substitute amendment with the original bill. Memorandum from Legislative Council Staff on Summary of Substantive Provisions in Assembly Substitute

Amendment 4 to 1981 Assembly Bill 936 (March 24, 1982). That memo states: "State Override. Creates an explicit *but limited* state override of local permits, approvals and zoning applicable to new or expanded solid waste disposal and hazardous waste storage, treatment and disposal facilities . . . ." *Id.* at 2 (emphasis added). The initial legislation explicitly providing for state override of local zoning ordinances was modified in the political process to provide a limited state override only where the Waste Facility Siting Board determined that a preexisting local approval was arbitrary or discriminatory. Because the board concluded that the exclusion of solid waste disposal facilities from the A-1 Exclusive Agriculture District was not arbitrary or discriminatory, the board properly deleted from MLI's final offer the item which would have made the zoning regulation inapplicable.

## II.

## THE ARBITRABILITY ORDER

In its July 18, 1991 order determining arbitrability, the board concluded that under sec. 144.445(8)(b)3, Stats., the design of the proposed liner and cap, the design of the gas control system, the source of waste, and the environmental monitoring and testing to be used at the Libby Landfill site were arbitrable as "operational concerns." MLI argued that these matters should not be arbitrable because they are uniquely within the purview of DNR. The board concluded, however, that:

> The role[s] of the Wisconsin Department of Natural Resources and the Waste Facility Siting Board are intertwined but independent of one another. To conclude that the Waste Facility Siting

Board should echo the Wisconsin Department of Natural Resources' decisions on all matters, including design features, is contrary to law.

The Waste Facility Siting Law contemplates two distinct periods in which the board performs a role: first, when the applicant and the local committee are engaged in negotiation; and second, when the parties reach impasse and request arbitration. We first consider the negotiation phase of the process. Section 144.445(8)(a), Stats., provides:

> The applicant and the local committee may negotiate with respect to *any subject* except:
> 1. Any proposal to make the applicant's responsibilities under the approved feasibility report or plan of operation less stringent.
> 2. The need for the facility. [Emphasis added.]

Under sec. 144.445(9)(b), Stats., either party may petition the board for a determination as to whether a proposal is excluded from negotiation under subsec. (8)(a).

The licensing process under sec. 144.44, Stats., anticipates that the applicant and the local committee representing affected municipalities may negotiate items which the applicant may include in its feasibility report. Section 144.44(2)(n)2, Stats., provides:

> If there is a negotiated agreement or an arbitration award prior to issuance of the determination of feasibility, the final determination of feasibility may not include any item which is less stringent than a corresponding item in the negotiated agreement or arbitration award.

Nothing in sec. 144.44, prescribing the approval process, removes any item included in an approved feasibility report from negotiation.

We conclude that the legislature intends that the feasibility report will prescribe minimum criteria which the proposed facility must meet, but the applicant and the local committee may negotiate and agree to any item more stringent than provided by the feasibility report. Section 144.445(9)(f), Stats., provides that any item proposed to be included in a negotiated agreement "may" be submitted to DNR for consideration. The department "shall reject" those items which would make the applicant's responsibilities less stringent than required under the approved feasibility report or plan of operation. The department may incorporate all items which it does not reject in the approved feasibility report or the plan of operation. Section 144.445(9)(g), Stats., provides: "All issues subject to negotiation which are resolved to the satisfaction of both the applicant and the local committee and, if necessary, are approved by the department under par. (f), shall be incorporated into a written agreement." Thus, an applicant may have to comply with a DNR approved feasibility report and plan of operation as well as a written agreement between the applicant and affected municipalities.

We next consider the arbitration phase of the negotiation and arbitration process. If the applicant and the local committee cannot reach agreement on an item, either the applicant or the local committee, or both, may petition the board to initiate arbitration. The subjects which may be arbitrated are limited. The dispute here is whether the following items are arbitrable under sec. 144.445(8)(b)3, Stats.: (a) landfill liner and cap design; (b) source of waste; (c) design of landfill gas control system; and (d) environmental monitoring and testing.

Section 144.445(8)(b), Stats., provides:

Only the following items are subject to arbitration under this section:

. . . .

3. Operational concerns including, but not limited to, noise, dust, debris, odors and hours of operation but excluding design capacity.

MLI argues that the items the board determined to be arbitrable should not be arbitrated because they are "uniquely within the purview of DNR." We disagree. These items are not uniquely within the purview of DNR—they are subject to negotiation between the applicant and the local committee regardless of whether DNR has considered or will consider these items when it reviews the applicant's feasibility report. During the negotiation process, any item is subject to negotiation except need and any proposal making the applicant's responsibilities less stringent. We believe these limitations also apply to the arbitration process.

In view of the expansive authority conferred by the legislature upon the applicant and affected municipalities to negotiate operational concerns, we conclude that it is consistent with the legislative intent to give "operational concerns" a broad construction when determining whether an item subject to negotiation is also subject to arbitration. The nature of the arbitration process supports our conclusion.[8] Negotiation, mediation, and arbitration follow a logical process. In

_____

[8] Also, the finding of the legislature in sec. 144.445(1)(e), Stats., confirms our conclusion:

The legislature further finds that whenever a site is proposed for the solid waste disposal or the treatment, storage or disposal of hazardous waste, the nearby residents and the affected municipalities may have a variety of legitimate concerns about the location, design, construction, operation, closing and long-term care of facilities to be located at the site, and that these facilities must be

the first instance, if the parties are in disagreement with respect to any item, they may negotiate to resolve their differences. If they cannot, mediation attempts to bring the parties together. If mediation fails, the parties may submit their dispute to an arbitrator. It would be anomalous to conclude that the applicant for a license and the affected municipalities could negotiate and mediate items of operational concern, but could not arbitrate with respect to such items. We therefore conclude that the board correctly determined that the design of the proposed liner and cap, the design of the gas control system, and environmental monitoring of nuisance concerns are arbitrable as "operational concerns."

We reach a contrary conclusion as to source of waste. The board determined: "The source of waste is an arbitrable operational concern pertaining to the landfill operation and is of concern to the nearby residents because it is not regulated by the Department of Natural Resources." We reject the proposition that whatever is not regulated by DNR is arbitrable as an "operational concern." We find no support for that proposition in the language of sec. 144.445, Stats., or the history of the legislation.

In support of the board's determination, the committee argues that: (1) MLI represented that it would only accept waste from Dane County; (2) the source of waste may affect transportation routes; and (3) accelerated consumption of space in the Libby Landfill will, in the absence of "available mechanisms to limit the source of waste," make the concept of need for landfills meaningless. MLI, on the other hand, simply maintains "solid waste is solid waste," and the source of such

---

established with consideration for the concerns of nearby residents and the affected municipalities.

835

waste has no impact on the operation of the facility in which it is placed.

■

The committee's arguments do not persuade us. First, DNR's February 28, 1990 Conditional Feasibility Determination states only that sufficient waste is generated by the anticipated service area of Dane County to establish need for the facility. The determination does not limit the source of waste to Dane County.[9] Second, concern as to transportation routes for hauling waste to the facility may be addressed directly. Finally, sec. 144.445(8)(a)2, Stats., expressly states that need for the proposed landfill facility is not a negotiable issue. If need is not negotiable, it cannot be revived as an arbitrable item in the guise of a geographic limitation on the source of waste. Accordingly, we conclude that the board erred when it determined that source of waste is an arbitrable issue under sec. 144.445(8)(b)3, Stats. We remand this cause to the circuit court for further proceedings consistent with this opinion.

---

[9] The board reserved judgment on the issue of the constitutionality of limitations on the source of waste pending receipt of specific language presented in final offers. MLI's final offer states that the "[l]andfill shall accept only waste generated within the State of Wisconsin." MLI's self-imposed limitation does not raise constitutional questions as would government-imposed geographic limitations on the source of waste. For discussion of the constitutional issue raised by government-imposed geographic limitations on the source of waste, see *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natural Resources*, 504 U.S. —, 119 L. Ed. 2d 139 (1992); *City of Philadelphia v. New Jersey*, 437 U.S. 617 (1978). *See also Town of Clarkstown v. C & A Carbone, Inc.*, 182 A.D.2d 213, 587 N.Y.S.2d 681, *cert. granted*, 124 L. Ed. 2d 635 (1993).

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.