## L.T. HAMPEL CORPORATION, Petitioner-Respondent,

v.

## Wisconsin DEPARTMENT OF REVENUE, Appellant.

Court of Appeals

*No. 89-0890. Submitted on briefs October 12, 1989.—Decided July 19, 1990.*

(Also reported in 459 N.W.2d 598.)

For the appellant the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Gerald S. Wilcox,* assistant attorney general.

For the petitioner-respondent the cause was submitted on the brief of *David D. Wilmoth* and *Michael G. Carter* of *Quarles & Brady* of Madison.

Before Eich, C.J., Dykman and Sundby, JJ.

SUNDBY, J.    The Wisconsin Department of Revenue appeals from an order of the circuit court reversing a decision and order of the Tax Appeals Commission. The commission affirmed the department's sales tax assessment against L.T. Hampel Corporation for its sales in Wisconsin of its manufactured product, Calf-tel, a plastic thermoformed calf hutch. We conclude that Calf-tel calf hutches are not "machines" which are exempt from sales taxes under sec. 77.54(3), Stats. We therefore reverse the circuit court's order.

## I.

Section 77.54, Stats., provides that "[t]here are exempted from the taxes imposed by this subchapter: . . . (3) The gross receipts from the sales of . . . machines . . . used directly in farming, including dairy farming . . .." The commission, in a split decision, concluded that "a strict but reasonable construction of 'machine' calls for resolving the overwhelming doubt we have expressed in this case that Calf-tels are 'machines' against exemption and in favor of taxability."

The department acknowledges that construction of sec. 77.54(3), Stats., presents a question of law, but sug-

gests that we must uphold the commission's conclusion if any rational basis supports it. *Kewaunee County v. WERC,* 141 Wis. 2d 347, 355, 415 N.W.2d 839, 842 (Ct. App. 1987). This standard of review is inapposite when the statute has been authoritatively interpreted by decisions of the appellate courts. *See County of Milwaukee v. LIRC,* 139 Wis. 2d 805, 830, 407 N.W.2d 908, 918 (1987) (rational-basis rule has exception when agency's application of particular statute to found facts conflicts with prior court decisions). We are as competent as is the commission to read and apply these decisions. *See La Crosse Footwear v. LIRC,* 147 Wis. 2d 419, 423, 434 N.W.2d 392, 393 (Ct. App. 1988) (deference to agency not appropriate where court is as competent as agency to construe statute).

Section 77.54(3), Stats., has been construed authoritatively by the Wisconsin Court of Appeals in *Ladish Malting Co. v. Department of Revenue,* 98 Wis. 2d 496, 297 N.W.2d 56 (Ct. App. 1980), and by the Wisconsin Supreme Court in *Department of Revenue v. Greiling,* 112 Wis. 2d 602, 334 N.W.2d 118 (1983). The facts in *Greiling* more closely parallel the facts of this case.

In *Greiling,* the taxpayer purchased metal tubing and polyethylene film which were used to construct a greenhouse. The issue in *Greiling* was "whether a greenhouse with shading, irrigation and ventilation systems is a machine used in floriculture thereby qualifying its components for an exemption from the state use tax under sec. 77.54(3), Stats." *Greiling,* 112 Wis. 2d at 603, 334 N.W.2d at 119. The court held that the greenhouse was a machine used in floriculture and that the polyethylene film and metal tubing used in the greenhouse's construction were exempt under sec. 77.54(3). *Id.* at 608, 334 N.W.2d at 121. The court defined "machine" as follows:

"Machine" may be a nontechnical common-place word; however, it is not the word "machine" by itself that is to be analyzed, but the word in conjunction with its use in floriculture that must be considered. More appropriate definitions are:

(1)  "a structure consisting of a framework and various fixed and moving parts, for doing some kind of work." Webster's New World Dictionary Second College Edition (1980).

(2)  "every mechanical device or combination of devices to perform some function and produce a certain effect or result." 69 C.J.S. *Patents,* sec. 10 at 183 (1951).

*Id.* at 605–06, 334 N.W.2d at 120.

The *Greiling* court applied the "use or function" test adopted in *Ladish,* 98 Wis. 2d at 506, 297 N.W.2d at 60. The court said:

This greenhouse was designed solely to nurture and produce plants. It cannot be viewed merely as a storage facility because it has an active function of creating and controlling an environment conducive to the production of floricultural crops. This greenhouse is a significant contributive factor in the production of plants.

*Greiling,* 112 Wis. 2d at 607, 334 N.W.2d at 121.

Here, the commission concluded that it was not necessary to resort to the use or function test because the taxpayer's Calf-tel did not fulfill the dictionary definition of "machine" adopted in *Greiling.* The commission apparently read *Greiling*'s definition of "machine" as a threshold requirement to exemption regardless of the use or function of the alleged "machine." The commission misreads *Greiling.* The *Greiling* court said: "We believe that the [use or function] test should be determi-

native when resolving use tax exemption issues." *Id.* We are required to adhere to precedent. *State v. Lossman,* 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984).

## II.

Under the use or function test, "the central question is whether the structure is one 'whose utility is principally and primarily a significantly contributive factor in the actual manufacture or production of the product itself.' " Mertens, 5 *Law of Federal Income Taxation* sec. 32A.14 at 50 (rev. ed. 1980). *Greiling,* 112 Wis. 2d at 607, 334 N.W.2d at 121 (quoting *Ladish Malting Co.,* 98 Wis. 2d at 506, 297 N.W.2d at 60).

In *Ladish,* the court considered whether certain property used in the manufacture of malt was exempt from property taxation under sec. 70.11(27), Stats., as manufacturing machinery. The *Ladish* court found that the atemporator used in the production process was similar to a giant air-conditioner and humidifier; the kilns were giant ovens; and the malt-elevators contributed to an organic change in the malt—all of which were essential to the production process. *Ladish,* 98 Wis. 2d at 503, 297 N.W.2d at 59. Similarly, the *Greiling* court found that the greenhouse had "an active function of creating and controlling an environment conducive to the production of floricultural crops." *Greiling,* 112 Wis. 2d at 607, 334 N.W.2d at 121.

Unlike the atemporator, the kilns, and the malt-elevators in *Ladish* and the greenhouse in *Greiling,* the utility of the taxpayer's calf hutch is not principally and primarily a significant contributive factor in the production of a product. Here, the undisputed evidence is that the taxpayer's calf hutch simply protects the calf's natural environment. The hutch's principal utility is that it

isolates individual calves from the rest of the herd. The designer of the Calf-tel hutch testified, "isolation housing is very important in calf raising."

The designer testified that the objective of the taxpayer's calf hutch is to provide the best possible environment for raising healthy dairy calves. The Calf-tel is designed so that: (1) It is free of drafts; (2) it provides a stable temperature and humidity level, and as low a humidity level as possible in the summertime; (3) it is labor efficient and provides ease in sanitation; (4) it contributes to the calf's health and comfort; and (5) it is economical. The designer outlined how the Calf-tel meets these objectives:

(1) *Draft-free.* The hutch is built with an offset entrance with a weather-shielded border around the front. Each hutch has vents that exhaust harmful manure gases, urine odors and excess humidity but do not create a draft. All component parts are overlapped and gasketed. A flexible lip around the base of the hutch provides a weather seal to the ground.

(2) *Temperature and Humidity.* Temperature and humidity are controlled by constructing the hutch with a white, extremely opaque material, which reflects ninety percent of the sun's heat. Temperature and humidity are also controlled by vents which are adjustable, either daily or seasonally.

(3) *Labor Efficiency and Sanitation.* The Calf-tel has a side feeding station with a hinged door latch. It has a pail holder inside the hutch which allows the calf to eat in the hutch. The feeding station is placed toward the front of the hutch so that the calf will not defecate in the area where it will be laying. The hutch is constructed of nontoxic and nonporous material, which is impervious to the strongest of acids and disinfectants. Thus, a

farmer can sterilize a Calf-tel hutch, which he cannot do with a wooden or fiberglass hutch.

(4) *Health and Comfort.* The considerations of the calf's health and comfort are "somewhat simplistic," inasmuch as any simple shelter will provide isolation from the herd. Nonetheless, isolation allows the farmer "first-day detection" of sickness or injury. Also, isolation stops calves from suckling on one another, which can cause mastitis, and it prevents calves from chewing on one another's ears. It also allows the calf to get maximum feed and water at all times.

The Calf-tel is responsible for providing "microenvironments" optimum for the comfort and health of the calf. As we explain in part III.B., these microenvironments are not created by the Calf-tel but by the calf as it moves from one place to another in the hutch.

(5) *The Economics.* This factor is not pertinent to the issue before us.

### III.

### A.

The department presented the expert testimony of Dr. Howard Larsen, a retired University of Wisconsin dairy nutritionist. He described his experience in experimenting with cold housing for dairy calves. He explained that "cold housing" is placing a calf in essentially its natural environment, totally separated from mature cows. Through Dr. Larsen, the department introduced an article authored by Dr. Larsen, R.E. Brunsvold and C.O. Cramer entitled *Behavior of Dairy Calves Reared in Hutches as Affected by Temperature,* 28 *TRANSACTIONS* of the American Society of Agricultural Engineers 1265–68 (1985). In that article, the authors state:

428

Calf hutches have developed over the past decade as an alternative to conventional warm housing. The success of the hutch may be attributed, at least in part, to its healthy environment. Individual calves are isolated and free to move around and follow their natural instincts in seeking out the most comfortable available microenvironments. The hutch offers a number of microenvironments: the rear for maximum wind protection, the middle or front, the doorway for wind protection with exposure to the sun and the outdoor environment.

*Id.* at 1265.

In another report, authored by Dr. Larsen, G.H. Tenpas, and C.O. Cramer, *Rearing Dairy Calves in Warm and Cold Housing,* presented at The American Dairy Science Assoc. 75th Annual Meeting (1980), the authors state: "Cold housing systems depend on natural ventilation, have no insulation, barn or hutch temperatures fluctuate with outside temperatures, protection from winds is afforded and bedding is maintained dry."

Dr. Larsen testified that a portable calf hutch does not have any mechanical parts, electrical parts, electronic parts; is not part of a larger unit; does not include plumbing; and does not monitor temperature or humidity or air flow or control the temperature.

Dr. Larsen opined that the Calf-tel is one of the best, most well-designed hutches but that it performed essentially the same function as the calf hutches he described.

## B.

The taxpayer places great reliance on the commission's finding that "[c]alf hutches are an extremely effective method of producing and maintaining . . . otherwise natural microenvironments." While the word

"microenvironment" conjures up the image of sophisticated technology operating to produce a series of artificial environments, the undisputed testimony establishes that the microenvironments in a calf hutch are found and created by the calf itself simply by moving from one area of the hutch to another.

The fact that the designer has used state-of-the-art technology in designing the Calf-tel does not, however, make it a machine. The Calf-tel is simply an efficient way to provide a cold housing environment for a calf. Calf-tels have no active function of creating and controlling an environment conducive to the production of calves. The Calf-tel is essentially a passive but sophisticated shelter for a calf. It is not a "machine" under the use or function test.

*By the Court.*—Order reversed.